**DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | |
|---|---|
| **MOISE MAMOUZETTE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 13-117** |
| ) | |
| **MARC A. JEROME, Individually and in** ) | |
| **his official capacity as the Territorial** ) | |
| **Medical Director; RONALD ANDERS,** ) | |
| **Individually and in his official capacity as** ) | |
| **Chief of Obstetrics and Gynecology at** ) | |
| **Governor Juan F. Luis Hospital;** ) | |
| **DARICE PLASKETT, Individually and** ) | |
| **in her  official capacity as the** ) | |
| **Commissioner of the Department of** ) | |
| **Health; THE VIRGIN ISLANDS** ) | |
| **BOARD OF MEDICAL EXAMINERS;** ) | |
| **THE GOVERNMENT OF THE VIRGIN** ) | |
| **ISLANDS; DOES 1-5** ) | |
| ) | |
| **Defendants.** ) | |

**Attorneys:**
**Yohana Manning, Esq.,**
St. Croix, U.S.V.I.
　　　*For the Plaintiff*

**Erika M. Scott, Esq.,**
St. Croix, U.S.V.I
　　　*For the Defendants*


**<u>MEMORANDUM OPINION</u>**

**Lewis, Chief Judge**

THIS MATTER is before the Court on Plaintiff's "Amended Motion for Temporary

Restraining Order and Preliminary Injunction" ("Motion," Dkt. No. 23), which Defendants have

opposed (Dkt. No. 26). A hearing on Plaintiff's Motion was held on January 14, 2014, and the

parties were directed to submit further briefing, with authorities, on the issue of administrative exhaustion.  For the reasons that follow, the Court will deny Plaintiff's Motion.

## I.   BACKGROUND

### A. Procedural History

By Complaint dated December 13, 2013, Plaintiff initiated suit against Defendants Dr. Marc Jerome, Dr. Ronald Anders, and Commissioner of Health Darice Plaskett, in their individual and official capacities; the Virgin Islands Board of Medical Examiners; and the Government of the Virgin Islands (collectively, "Defendants").  (Dkt. No. 1).  Together with his Complaint, Plaintiff filed a Motion for a Temporary Restraining Order ("TRO"), and a Motion to Seal the case.  (Dkt. Nos. 2, 3).   The Court denied the Motion to Seal by Order dated December 13, 2013, because Plaintiff failed to meet his burden required for sealing.  (Dkt. No. 8).

Plaintiff served Defendants with his Complaint and TRO Motion on December 16, 2013. (Dkt. Nos. 10, 11, 12, 14). The Court ordered a response from Defendants and scheduled a hearing on the Motion.  (Dkt. No. 13).  Subsequently, the parties jointly moved to continue the scheduled hearing, to afford time to conduct discussions the parties represented as ongoing regarding possible resolution of the matter.  (Dkt. No. 17).  The Court granted the continuance. (Dkt. No. 21).

As ordered by the Court, Plaintiff filed a status update on January 7, 2014, in which he indicated that the matter remained unresolved. (Dkt. No. 22).  Plaintiff also filed the Amended Motion currently before the Court, (Dkt. No. 23), and moved for a hearing  (Dkt. No. 24).  The Court granted the latter Motion, and scheduled a hearing for January 14, 2014.  (Dkt. No. 25).  In accordance with a schedule set by the Court, Defendants supplemented their Opposition to Plaintiff's Motion, and Plaintiff responded.  (Dkt. Nos. 26, 27).

Plaintiff alleges that his suspension and subsequent termination from employment with the Department of Health, the revocation of his Special Unrestricted License ("SUL") to practice medicine, and the attendant circumstances, violated his due process rights protected by the Constitution.  In his Complaint, Plaintiff also alleges a violation of the Sherman Antitrust Act, and asserts several claims under Virgin Islands law: (1) breach of contract for failure to pay him; (2) breach of the duty of good faith and fair dealing; (3) wrongful discharge; (4) tortious interference; (5) breach of the Virgin Islands Antitrust Act; (6) unfair competition; and (7) violation of the Virgin Islands Criminally Corrupt Influenced Organizations Act.  The focus of Plaintiff's instant Motion is primarily on the procedural due process allegation.

### B.  Factual Background[1]

Plaintiff is an obstetrician/gynecologist who was practicing medicine in St. Croix under a SUL, granted on September 28, 2009 and revoked effective January 10, 2014.  (Dkt. No. 26, Ex. 1).  Such a license, by its terms, requires Plaintiff to: (1) be eligible or qualified for certification by the American Board of Obstetrics and Gynecology ("ABOG"); (2) maintain an unrestricted license to practice somewhere in the United States; and (3) be a graduate of an accredited residency program.   27 V.I.C. § 7(c); (Dkt. No. 26, Ex. 1).  The SUL, which is renewable annually for five years, also requires Plaintiff to maintain government employment as a condition of holding the license.  *Id*.  After five years the SUL converts to a standard license to practice medicine in the Virgin Islands, waiving the local examination requirement.  27 V.I.C. § 7(c).

---

[1]  The factual assertions contained herein are based on allegations set forth in the Complaint and the written submissions filed in connection with Plaintiff's Motion for injunctive relief.  These facts are assumed to be true for purposes of resolving the instant motion only.

Plaintiff's SUL has been renewed since its issuance in 2009.  He was in the last year of the five-year period when the instant suspension, termination, and revocation occurred.[2]

Plaintiff was employed, until last month, by the Virgin Islands Department of Health, and saw patients at the Charles Harwood Hospital.  He also maintained a private practice and saw patients in the private setting, thus splitting his time between the Harwood Hospital and his private practice. (Dkt. No. 1).   He is a unionized employee, and subject to a Collective Bargaining Agreement ("CBA") entered between the Government of the Virgin Islands Department of Health and the Union representing Public Health Physicians.  (Dkt. No. 36, Ex. 1).  The CBA contains a provision stating that the grievance and arbitration procedure detailed therein "shall be the exclusive means of settlement of all grievances arising under the Agreement." *Id.*

The instant suit stems from Plaintiff's termination from his employment with the Government, and the consequent revocation of his SUL.  The sequence of events is as follows.  By letter dated November 21, 2013 Plaintiff received a request from the Territorial Medical Director, asking Plaintiff to submit proof of his ABOG qualification or certification to the Office of the Commissioner of Health by November 27, 2013.  (Dkt. No. 1, Ex. 4).  On December 9, 2013, Plaintiff received a letter from Defendant Plaskett dated December 6, 2013, notifying him that he was being suspended without pay from his position with the Department of Health, and that he was also being recommended for termination.  (Dkt. No. 1, Ex. 2).  The letter of suspension stated that because the November 21, 2013 request for proof "revealed that [Plaintiff is] neither board qualified or certified," he was in breach of his agreement with the Government. *Id.*  Plaintiff responded with a letter representing that he is eligible for ABOG certification given

---

[2] Plaintiff represented during oral argument that his license was last renewed in September of 2012, but for a two-year term, rather than the yearly renewal set forth in the governing statute.

4

that he has passed the ABOG written exam and completed an accredited residency program. (Dkt. No. 1, Ex. 8).[3]  He was terminated, "effective immediately" by letter dated December 16, 2013 from Governor John P. de Jongh (Dkt. No. 24, Ex. 1), which was received by Plaintiff on January 7, 2014.   The Virgin Islands Board of Medical Examiners ("BME") terminated Plaintiff's license effective January 10, 2014, on the grounds that he is no longer a government employee as required by the statute authorizing the SUL.  27 V.I.C. § 7(c)(5).

Contemporaneously with the filing of this lawsuit, Plaintiff's Union filed a grievance on his behalf challenging his suspension and seeking reinstatement.  (Dkt. No. 26, Ex. 2).  Having received no response from Defendant Plaskett, the Union filed a request for arbitration on December 31, 2013, pursuant to the terms of the CBA.  (Dkt. No. 26, Ex. 3).  The grievance was amended on January 9, 2014, to include a challenge to Plaintiff's termination.  (Dkt. No. 26, Ex. 4).  Plaintiff also filed a complaint with the Public Employees Relations Board challenging his suspension, which Defendants have moved to dismiss on jurisdictional grounds given the existence of a CBA.  (Dkt. No. 33, Ex. 5).

Plaintiff is currently unable to see patients because his SUL has been revoked. He contends that no cause existed to suspend or terminate him, and that the process afforded him does not comply with constitutional due process protections. In the instant Motion, Plaintiff seeks injunctive relief from this Court reinstating his employment and reversing the revocation of his SUL pending the resolution of this matter on the merits.

---

[3] Plaintiff's letter is dated November 26, 2013, but was not provided to his employer until December 9, 2013 after he received the suspension letter.  (Dkt. No. 1, ¶123).

## II.     APPLICABLE LEGAL PRINCIPLES

### A.  Injunctive Relief

This Court may grant injunctive relief, under Rule 65 of the Federal Rules of Civil Procedure, either with a temporary restraining order or preliminary injunction.  *Am. Tel. & Tel. Co. v. Winback and Conserve Prog. Inc.,* 42 F.3d 1421, 1427 (3d Cir.1994).  Injunctive relief is extraordinary and "should be granted only in limited circumstances."  *Am. Tel. & Tel. Co.*, 42 F.3d at 1427.   To prevail on a motion for injunctive relief, a plaintiff must show:

> (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.

*Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *Allegheny Energy, Inc. v. DQE, Inc.,* 171 F.3d 153, 158 (3d Cir.1999)).  The showing must be cumulative; the Court considers each element above and all are required before an injunction or relief may issue. *Goodwin v. Castille*, 465 F. App'x 157, 160 (3d Cir. 2012) (citing *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)).

It is well-established that a plaintiff's failure to demonstrate likelihood of success on the merits, by itself, is fatal to a motion for a temporary restraining order or preliminary injunctive relief.  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (failure to show likelihood of success "must necessarily result in a denial of a preliminary injunction."); *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982).  The same is true regarding irreparable harm. *In re Arthur Treacher's*, 689 F.2d at 1143.  If Plaintiff can show both a likelihood of success on the merits of the case and irreparable harm, the Court then looks to "what the equities seem to require"—"the [harm] to the nonmoving party and whether the [relief] serves the public interest."  *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484. (3d Cir. 2000)

(internal citations omitted). In accordance with this standard, Plaintiff must show all four elements before injunctive relief can issue from this Court. *NutraSweet Co.*, 176 F.3d at 153.

### B.  Fourteenth Amendment Procedural Due Process

The Fourteenth Amendment of the United States Constitution forbids a state actor from depriving persons of life, liberty, or property without due process of law.  U.S. Const. Amend. XIV.   When—as here—a Plaintiff brings a procedural due process claim under 42 U.S.C. § 1983, a two-part analysis is employed by the Court.  *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984).  The analysis first inquires as to whether the interest asserted is a protected life, liberty, or property interest, and then asks whether the procedures available provided the "due process of law" the Constitution requires prior to deprivation. *Id.*

### C.  Administrative Exhaustion Requirement

Full pursuit of an available administrative remedy is generally required before judicial relief may be sought and considered.  *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938) ("it is a long settled rule of judicial administration . . . that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.").  The exhaustion requirement "rests on the premise that it is more efficient to allow the administrative process to go forward without interruption than to permit parties to involve the court at various intermediate intervals."  *La Vallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Mgmt. Com.*, 866 F.2d 616, 620 (3d Cir. 1989).  A court need not decide "the merits of a plaintiff's substantive claim until it satisfies itself that the claim is properly before it, including determining whether the plaintiff properly exhausted administrative remedies."  *Wilson v. MVM, Inc.*, 475 F.3d 166, 173 (3d Cir. 2007).

The exhaustion requirement, however, is not absolute. *Facchiano v. U.S. Dep't of Labor*, 859 F.2d 1163, 1167 (3d Cir. 1988).  A plaintiff may be excused from exhausting administrative remedies under three circumstances: (1) "when the challenged agency action constitutes a clear and unambiguous violation of statutory or constitutional rights"; (2) when resort to administrative procedures is "clearly shown to be inadequate to prevent irreparable injury"; and (3) "when exhaustion is futile." *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor*, 619 F.2d 231, 245 (3d Cir. 1980).  The Plaintiff bears the burden of proof, and a "clear and positive" showing of inadequacy or futility is required. *See Honig v. Doe*, 484 U.S. 305, 327 (1988); *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002).  Determination of whether exhaustion is required is "within the sound discretion of the courts." *State of New Jersey v. Dep't of Health & Human Servs.*, 670 F.2d 1262, 1277 (3d Cir. 1981) (quoting *NLRB v. Industrial Union of Marine & Shipbuilding Workers*, 391 U.S. 418, 426 n.8 (1968)).

Here, Plaintiff must show the administrative processes available to him cannot adequately remedy the harm he has suffered as a result of his termination. *See Persico v. City of Jersey City*, 67 F. App'x 669, 675 (3d Cir. 2003) (internal citations omitted).  Failure to exhaust, or failure to establish an exception to exhaustion, demonstrates that this matter is not properly before the Court. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

### III.   <u>DISCUSSION</u>

Plaintiff contends that administrative exhaustion is not required in this case, Defendants disagree. For the reasons that follow, Plaintiff's arguments are unavailing. The Court finds that exhaustion is required where, as here, the CBA provides an adequate and meaningful process for determination of the merits and issuance of relief.

As contemplated in the parties' CBA, arbitration is the proper venue for Plaintiff to raise the claims pleaded in the instant suit, and the arbitration process has not yet been exhausted. Plaintiff cannot establish a likelihood of success on the merits *in this Court*, because a "procedural due process violation cannot have occurred when the governmental actor provides apparently adequate remedies and the plaintiff has not availed himself of those remedies." *Alvin*, 227 F.3d at 116 (citing *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)). [4] Accordingly, this action is not properly before the Court and Plaintiff's Motion must be denied.

Here, the process set forth in the CBA to challenge adverse decisions in the employment relationship between Plaintiff and the Department of Health appears to be provide due process. (Dkt. No. 36, Ex. 1); *Alvin,* 227 F.3d at 116.  The CBA, in Article IX, identifies the grounds for which an employee may be terminated and the process to be followed by an aggrieved individual.  (Dkt. No. 36, Ex. 1).  Sections 1-5 of Article X state that a grievance is any dispute as to the interpretation, application, or performance of the employment Agreement (the CBA), and sets forth a procedure which "shall be the *exclusive* means of settlement of all grievances arising under the Agreement." *Id*. (emphasis added).

The propriety of Plaintiff's termination, therefore, falls squarely into the category of disputes arising under the CBA for which the grievance procedure is the sole avenue for resolution.  Article X of the CBA then specifies a multi-step grievance procedure in which the Union, on behalf of a member, may file for arbitration for resolution of grievances not satisfactorily resolved with the Commissioner of Health. *Id*. Arbitration is therefore the bargained-for venue for dispute resolution between the parties in this case and offers an avenue for full determination of the merits of the claims.

---

[4] The first prong of the due process analysis—whether Plaintiff has a property interest in his employment with the Department of Health—is not at issue because Defendant conceded at oral argument that such a property interest exists.

Plaintiff's Union filed a grievance with the Commissioner on December 11, 2013. (Dkt. No. 26, Ex. 2). Having received no response, Plaintiff submitted the matter for arbitration on December 31, 2013.   The arbitration request was amended on January 11, 2014 to include Plaintiff's termination. (Dkt. No. 26, Exs. 3-4).  Plaintiff is thus pursuing the available grievance process, and a court will not evaluate a procedural due process challenge where the parties have not fully employed the available avenues for the resolution of disputes.  *See Alvin,* 227 F.3d at 116.

Plaintiff makes several arguments against administrative exhaustion, first contending that it is not required where – as here – an action is brought pursuant to 42 U.S.C. § 1983. He relies on *Patsy v. Bd. of Regents of State of Fla.* for this proposition.  457 U.S. 496, 516 (1982); (Dkt. No. 29).  The Supreme Court, in *Patsy* and several other cases, held that exhaustion was not mechanically required for § 1983 civil rights claims. *See Id.*; *Damico v. California*, 389 U.S. 416 (1967); *McNeese v. Board of Education*, 373 U.S. 668, 671-673 (1963).  In those cases, however, the claims were substantive due process challenges alleging discrimination based on race and sex.

A plaintiff seeking relief on a procedural due process claim, on the other hand, is required to exhaust "the processes that are available to him or her, unless those processes are unavailable or patently inadequate" to remedy the injury.  *Alvin*, 227 F.3d at 116.  As the Third Circuit explained the distinction, "exhaustion *simpliciter* is analytically distinct from the requirement that the harm alleged has occurred." *Id*.  Here, where the procedural harm cannot have occurred because the available remedies have not been fully pursued, the principle applies that "a state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Id*. (quoting *Dusanek v.*

10

*Hannon,* 677 F.2d 538, 543 (7th Cir.1982)).  Where there is an administrative process available "that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."  *Alvin,* 227 F.3d at 116; *see also McDaniels v. Flick,* 59 F.3d 446, 460 (3d Cir.1995).  Rather, for a Plaintiff to raise a procedural challenge, he must take advantage of the process available to him prior to challenging its sufficiency as a constitutional matter.

As noted above, employee termination and the attendant evaluation of cause for discharge present a controversy arising under the CBA.  The grievance procedure is accordingly the exclusive means of resolution.  (Dkt. No. 36, Ex. 1).

Plaintiff next argues that Defendants repudiated the CBA, and thus must now be estopped from raising administrative exhaustion as a defense. The alleged repudiation is based on the Government's failure to respond to the December 11, 2013 grievance filed by the Union, thus precipitating the Union's December 31, 2013 request for arbitration.  (Dkt. No. 31).  While the Court does not endorse the Government's lack of response to the grievance,[5] the Union has availed itself of the next step in the process, as set forth in the CBA, by requesting arbitration. In addition, Defendants raised the arbitration requirement in their response to Plaintiff's Motion, (Dkt. No. 26), and further indicated at the January 14, 2014 hearing that they fully intend to pursue the arbitration process as set forth in the CBA.  The Court will hold Defendants to their representations. Given Defendants' filings and representations in this matter, there is no evidence of repudiation that warrants estoppel or negation of the required arbitration provision of the CBA.

---

[5] Counsel for the Government represented at oral argument that the Government's failure to respond was due to the absence of the Commissioner of Health during the holidays.

Plaintiff next contends that the arbitration process is inadequate to remedy his injuries, and thus the administration exhaustion requirement is inapplicable.  (Dkt. No. 31).  He argues that an arbitrator is powerless to overturn the revocation of his SUL, and thus any remedy derived from the arbitration proceedings would be inadequate. (Dkt. No. 31).

The parties agree that the arbitrator does not have authority over the BME's licensure decisions. (Dkt. Nos. 31, 32).  The arbitrator does, however, have authority under the CBA to reverse the suspension and termination decisions, if appropriate, and to order Plaintiff's reinstatement.  *See United Indus. Workers v. Gov't of the V.I.*, 987 F.2d 162. 168 (3d Cir. 1993) (the CBA or agreement to arbitrate determines the scope of arbitrable issues); *Teamsters Local Union No. 764 v. J.H. Merritt & Co.,* 770 F.2d 40, 42 (3d Cir.1985).  Here, the BME's stated reason for the license revocation is Plaintiff's termination from his Government employment. If Plaintiff is ordered reinstated, the stated basis for the revocation would no longer exist. In the event that Plaintiff continues to be aggrieved by the BME's decision on the licensure issue, he has an available avenue for relief in the Superior Court of the Virgin Islands. 5 V.I.C. § 1421, *Tamarind Resort Associates v. Gov't of Virgin Islands*, 138 F.3d 107, 114 (3d Cir. 1998); *Moravian Sch. Advisory Bd. of St. Thomas, V.I. v. Rawlins*, 70 F.3d 270, 273 (3d Cir. 1995) (§ 1421 confers writ of review jurisdiction upon the local court over local matters). Accordingly, Plaintiff has adequate processes available to pursue the relief that he seeks.

Finally, Plaintiff argues that the arbitration proceeding is inadequate because the arbitrator lacks authority to issue immediate injunctive relief.  (Dkt. No. 31).  While the Federal Arbitration Act ("FAA") "established a strong federal policy in favor of the resolution of disputes through arbitration," *Alexander v. Anthony Intern., L.P.,* 341 F.3d 256, 263 (3d Cir.

2003),[6] an arbitrator derives his authority from the CBA itself. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38 (1987). The authority may include injunctive-type relief and the power to issue orders to cease and desist. *See Gen. Dynamics Corp. v. Local 5, Indus. Union of Marine & Shipbuilding Workers of Am., AFL-CIO,* 469 F.2d 848, 850-51 (1st Cir. 1972); *see also New Orleans S. S. Ass'n v. Gen. Longshore Workers, I.L.A. Local Union No. 1418,* 389 F.2d 369, 370 (5th Cir. 1968) (arbitrators' injunctions and orders to desist upheld by the circuit courts). Ultimately, however, this issue is one for the arbitrator to decide. *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.,* 461 U.S. 757, 756 (1983) (scope of arbitrator's authority is itself a question of CBA interpretation that falls to the arbitrator).[7] Accordingly, the Court will leave that issue for resolution by the arbitrator.

In sum, where, as here, Plaintiff has failed to shoulder his burden of demonstrating why the mandatory arbitration provision in the CBA should not be honored, he has failed to show a likelihood of success in pursuing the merits of the case before this Court.[8] Plaintiff's Motion will therefore be denied.

---

[6] The Supreme Court has read the FAA broadly in affirming a "liberal federal policy favoring arbitration," and the presumption in favor of arbitration where a valid arbitration clause or agreement exists is thus well established. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983).

[7] Plaintiff claims that the CBA does not expressly grant the arbitrator the authority to issue injunctive relief, and further states that the arbitrator may not "add to, subtract from, or modify the express provisions of [the CBA]." (Dkt. No. 31, Ex. 2). Plaintiff also argues that injunctive relief has not been "done in practice," nor is there any means for expediting the time-consuming arbitration process. *Id.* Defendants claim not to know whether an arbitration agreement to which the Government is a party permits the arbitrator to issue injunctive relief. (Dkt. No. 38).

The Court notes that there is nothing in the CBA that expressly sets forth the particular relief that the arbitrator may or may not provide. The Court also notes that it would seem anomalous to provide for arbitration as the exclusive means of resolving disputes under a CBA, but to leave the arbitrator powerless to provide injunctive or other appropriate relief, or to provide a schedule that is appropriate for the proceedings. In any event, as noted above, these contract interpretation issues are for the arbitrator to decide.

[8] In so ruling, the Court does not address Plaintiff's likelihood of success on the merits of his challenge to the process provided by the Department of Health prior to his suspension and termination.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's claim is not properly before the Court. Accordingly, the Court will deny Plaintiff's Motion for Temporary Restraining Order. (Dkt. No. 23).  An appropriate Order accompanies this Opinion.


Date: January 19, 2014                    _____/s/_____
                                          WILMA A. LEWIS
                                          Chief Judge