## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

_____

|  |  |  |
|---|---|---|
| **MOISE MAMOUZETTE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **UNITED INDUSTRIAL WORKERS-** | ) | |
| **SEAFARERS INTERNATIONAL UNION,** | ) | |
| | ) | |
| **Intervenor-Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2013-0117** |
| | ) | |
| **MARC A. JEROME, Individually and in his** | ) | |
| **official capacity as the Territorial Medical** | ) | |
| **Director; RONALD ANDERS, Individually and** | ) | |
| **in his official capacity as Chief of Obstetrics** | ) | |
| **and Gynecology at Governor Juan F. Luis** | ) | |
| **Hospital; DARICE PLASKETT, Individually** | ) | |
| **and in her official capacity as the Commissioner** | ) | |
| **of the Department of Health; THE VIRGIN** | ) | |
| **ISLANDS BOARD OF MEDICAL** | ) | |
| **EXAMINERS; THE GOVERNMENT OF THE** | ) | |
| **VIRGIN ISLANDS; and DOES 1-5,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

**Attorneys:**

**Yohana M. Manning, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**John J. Merchant, Esq.,**
St. Croix, U.S.V.I.
    *For Intervenor-Plaintiff*

**Joss N. Springette, Esq.,**
St. Thomas, U.S.V.I
    *For Defendants*

<u>**MEMORANDUM OPINION**</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Plaintiff-Intervenor United Industrial Workers-Seafarers International Union's ("Union") "Petition to Confirm the Arbitrator's Award and Direct that Judgment Be Entered" on behalf of Plaintiff Moise Mamouzette, MD (Dkt. No. 48);[1] Defendant Government of the Virgin Islands' ("Government") "Motion to Dismiss Petition to Confirm Arbitrator's Award and Direct that Judgment Be Entered and Incorporated Memorandum of Law" (Dkt. No. 88); Plaintiff Mamouzette's Reply thereto (Dkt. No. 89); and the Union's Amended Reply thereto (Dkt. No. 94-1). For the reasons that follow, the Court will grant the Union and Plaintiff's Petition, and deny the Government's Motion.

## I.    BACKGROUND

Plaintiff Moise Mamouzette, MD ("Plaintiff" or "Dr. Mamouzette") was employed by Defendant Government of the Virgin Islands through the Virgin Islands Department of Health ("DOH"). (Dkt. No. 48 at 2). After practicing medicine in the Territory for four years, Plaintiff was suspended from his government employment in December of 2013, and ultimately terminated, allegedly due to issues with his certification to practice medicine. (*Id.*). In response, the Union filed a grievance challenging the Government's actions. (*Id.*). Plaintiff subsequently filed the instant action—in which the Union intervened—alleging constitutional and other violations in connection with his suspension and ultimate termination from employment with the Department of Health, the revocation of his Special Unrestricted License ("SUL") to practice medicine, and attendant circumstances. (Dkt. Nos. 1; 47). Together with the Complaint, Plaintiff filed a Motion

---

[1] Plaintiff Moise Mamouzette subsequently joined in the Intervenor-Plaintiff's Petition to Confirm the Arbitrator's Award. (*See* Dkt. No. 63).

for a Temporary Restraining Order ("TRO") seeking to prohibit Defendants from terminating his employment and revoking his Special Unrestricted License to practice medicine. (Dkt. No. 1).[2]

In their Opposition to Plaintiff's request for a TRO, Defendants argued that: the Collective Bargaining Agreement ("CBA") governs the appropriate procedure for resolution of Plaintiff's claims; Plaintiff had failed to exhaust his administrative remedies; Plaintiff's due process claim is unavailing; the Virgin Islands Wrongful Discharge Act is not applicable to Plaintiff; Plaintiff will not suffer irreparable harm; and preliminary injunctive relief is not in the public interest and would cause greater harm to Defendants. (Dkt. No. 26). Of particular note here, Defendants argued that "Article X, Section 2, of Plaintiff's CBA states that the grievance procedure 'shall be the exclusive means of settlement of all grievances arising under this Agreement.'" (*Id.* at 5; *see also* Dkt. No. 32 at 2). Similarly, at the hearing on the TRO, counsel for Defendants stated that: the Arbitrator has the authority to decide the whole issue (January 14, 2014 Tr. at 154:3-18); the CBA "obviously speaks to the fact that any labor dispute or anything arising from [Dr. Mamouzette's] employment is going to go to arbitration" (*id.* at 153:4-7); "there is nothing in the CBA that carves out what the [A]rbitrator can't rule on" (*id.* at 153:22-23); the parties' dispute was based on breach of contract (*id.* at 155:13-17); and Plaintiff "has to exhaust his administrative remedies as provided for in the CBA through the grievance and arbitration route" (*id.* at 161:5-8).[3]

The Court agreed with Defendants, finding that "[t]he propriety of Plaintiff's termination . . . falls squarely into the category of disputes arising under the CBA for which the grievance

---

[2] In addition to the Government, the parties against whom Plaintiff brought this action consisted of various medical officials in their individual and official capacities, the Virgin Islands Board of Medical Examiners and Does 1-5.

[3] The Government also relied on the existence of the CBA in moving to dismiss Plaintiff's Complaint before the Public Employee Relations Board on jurisdictional grounds. (Dkt. No. 33-3).

procedure is the sole avenue for resolution." *Mamouzette v. Jerome*, 2014 WL 211402, at *4 (D.V.I. Jan. 19, 2014). Accordingly, the Court denied Plaintiff's request for a TRO, finding that Plaintiff was required to first exhaust his administrative remedies as set forth in the CBA. *Id.* at *6-7. In response to Plaintiff's contention that Defendants had repudiated the CBA, the Court stated that Defendants raised the arbitration agreement in their response to Plaintiff's Motion (Dkt. No. 26) and "indicated at the January 14, 2014 hearing that they fully intend to pursue the arbitration process as set forth in the CBA." *Mamouzette*, 2014 WL 211402, at *5; (January 14, 2014 Tr. at 163:10-18). The Court further stated that it would "hold Defendants to their representations." *Mamouzette*, 2014 WL 211402, at *5. The Court continued: "Given Defendants' filings and representations in this matter, there is no evidence of repudiation that warrants estoppel or negation of the required arbitration provision of the CBA." *Id.*

Plaintiff's employment was terminated on December 16, 2013 by letter from then Governor John P. de Jongh. (Dkt. No. 24-1). The letter states that "[t]he Department [of Health] recommended your termination based on your breach of the terms of the Letter of Agreement between yourself and the Government of the Virgin Islands, Department of Health." (Dkt. No. 24-1). As a result of the termination of Plaintiff's government employment, the Virgin Islands Board of Medical Examiners terminated Plaintiff's license effective January 10, 2014. *Mamouzette*, 2014 WL 211402, at *2.

It appears from the record that, after the parties proceeded to arbitration, the Government commenced a war of attrition. The Government did not conclude its part of the arbitrator selection process until more than three months after the Union had done so, and only did so after the Union contacted the Governor's office for intervention. (Dkt. No. 48-1 at 31). Despite the Union's repeated urgings for arbitration to take place as soon as possible, the parties struggled to arrive at

a hearing date. (*Id.* at 4-7). Of the 49 dates offered by the Arbitrator over a 10-month period, none were agreeable to the Government, whereas the Union was available for all of them. (*Id.* at 37-38). The Government offered no alternative dates of its own. (*Id.*).

The Arbitrator issued Orders on June 30, 2014 and September 7, 2014. (*Id.* at 8-18). Among other things, the June 30, 2014 Order provisionally enjoined the DOH from terminating Dr. Mamouzette and the Board of Medical Examiners from revoking Dr. Mamouzette's Special Unrestricted License "pending the processing of [the] grievance." (*Id.*). The Order also set a hearing date for September 15 and 16, 2014, and afforded the parties the opportunity to submit closing briefs thereafter; or alternatively, provided the parties with the opportunity, by mutual consent, to agree to an expedited briefing schedule that would not include a hearing. (*Id.*).

The Government filed a Motion for Reconsideration of the Arbitrator's June 30, 2014 Order, to which the Union submitted a response. (*Id.* at 14). The Arbitrator issued an Order on September 7, 2014 which, *inter alia*, stayed the June 30, 2014 Order's injunctive relief aspects. (*Id.*). The September 7, 2014 Order also outlined alternative courses of action for the parties going forward, including an option for resolution of the matter on the written record only, if the Government refused to schedule a hearing pursuant to the Order. (*Id.* at 17-18).

Following the September 7, 2014 Order, the Government stated that their key witness was unavailable for any of the offered dates, as the witness would be taking "indefinite medical leave," starting from the first offered hearing date. (*Id.* at 38). Based on this record, the Arbitrator concluded it was "clear that the Employer simply does not wish to concede to agreeing to a hearing date." (*Id.* at 45). The Arbitrator informed the parties via e-mail on September 28, 2014 that, in order to bring this matter to a timely resolution, he would resolve the grievance before him based on his "review of submitted, voluminous material [he had] received from the Parties in defense of

their various procedural motions and responses." (*Id.* at 48). The Arbitrator also afforded the parties ten days to submit briefs "focusing on the substantive issues between the parties involving the Grievance." (*Id.*).

The Arbitrator issued his "Order Based on Party Briefing and Record" on October 27, 2014. (*Id.* at 19-47). In characterizing the issue before him, the Arbitrator concluded, "the matter simply boils down to what was Grievant's '*certification and/or qualification*' status when DOH terminated him?" (*Id.* at 40) (emphasis in original). The Arbitrator found that a complaint regarding Dr. Mamouzette's treatment of a patient "was not part of Grievant's termination of employment letter from the DOH, nor his revocation of his SUL from the [Board of Medical Examiners]." (*Id.* at 42). He further found that in the absence of any indication of the outcome of the complaint, and in light of the Government's failure to amend Dr. Mamouzette's termination letter to include the complaint, it "can reasonably be concluded that this charge was unsubstantiated." (*Id.*).

Based on the record before him, the Arbitrator concluded that Dr. Mamouzette had been aware that his certification/qualification had lapsed at the time that he was terminated, and the Employer's decision to terminate him was reasonable at that time. (*Id.* at 44-46). However, the Arbitrator found that full just cause for termination was lacking due to: Dr. Mamouzette having been given inadequate notice; the Government's dilatory tactics during the arbitration process; and the "[u]nnecessary raising of potential damaging claims" that Dr. Mamouzette lacked any state medical license and a medical treatment issue "which reasonably can be concluded was found to be without support." (*Id.* at 46). The Arbitrator ordered that Dr. Mamouzette be reinstated effective August 25, 2014, the date on which he submitted documentation to the DOH showing that he met the requirements for licensure. (*Id.* at 46). Back pay was ordered from that date, as the Arbitrator

found that prior to August 25, 2014, Dr. Mamouzette was aware that he was not meeting the qualification/certification standard for employment. (*Id.*). The Arbitrator characterized his decision as amounting to a nine-month suspension with reinstatement, holding Dr. Mamouzette accountable for his lapse in certification. (*Id.*). The Union and the Government of the Virgin Islands Department of Health were the only parties to the arbitration. (*Id.* at 19). As a result, the Arbitrator's award was made against the Government only—not the individual Defendants or the Virgin Islands Board of Medical Examiners. (*Id.* at 46).

Under the express terms of the CBA, "[t]he Arbitrator's award rendered within the limitations of Section 2 of this agreement shall be final and binding on the aggrieved employee or employees, the Union, and the Employer and shall be enforceable in any court of competent jurisdiction." (Dkt. No. 36-1 at 24). In response to the Arbitrator's Order, the Government filed a Complaint to vacate the Arbitrator's award in the Superior Court of the Virgin Islands on January 23, 2015. (Dkt. No. 88 at 8-9). The Superior Court Complaint is brought by the Government of the Virgin Islands Department of Health against the Union on behalf of Dr. Mamouzette. (Dkt. No. 88-6 at 1). All seven counts of the Complaint seek to vacate the Arbitrator's award under various legal theories. (Dkt. No. 88-7 at 1-8).[4]

The Union filed the instant "Petition to Confirm the Arbitrator's Award and Direct that Judgment Be Entered" on behalf of Dr. Mamouzette on February 12, 2015. (Dkt. No. 48). The Government responded with a Motion to Dismiss Petition, in which it argues that Plaintiff fails to

---

[4] Specifically, the Complaint in the Superior Court matter seeks to vacate the Arbitrator's award on the grounds that: the Arbitrator breached the contract (CBA) by issuing relief; the award did not draw its essence from the CBA; the Arbitrator imposed his "own brand of industrial justice"; the Arbitrator exceeded his authority under the CBA; the Arbitrator disregarded the plain language of the CBA; the award violated public policy; and the Government was deprived of due process of law. (Dkt. Nos. 88-6; 88-7).

state a claim on which relief can be granted. (Dkt. No. 88). In this regard, the Government argues, "any appeal regarding [Dr.] Mamouzette's termination should have been brought pursuant to the Appellate Review Procedure of the PHPP [Division of Prevention, Health Promotion and Protection] Rules and Regulations as outlined in the Memorandum of Understanding ["MOU"] contained in the CBA," and "the basic language of the Memorandum of Understanding deprived Dr. Mamouzette from even filing a grievance with the Government." (*Id.* at 6-7; *see* Dkt. No. 36-1 at 39).[5] The Government's Motion does not mention the earlier Complaint filed in this Court by Dr. Mamouzette or the proceedings regarding Plaintiff's Motion for a TRO. (*See* Dkt. No. 88).

The Union responds that referral to arbitration is now the law of the case. (Dkt. No. 89 at 2). Plaintiff Mamouzette also requests that the Court apply the doctrine of judicial estoppel to prevent the Government from changing its position with regard to the appropriate procedure Plaintiff must follow to resolve his grievance. (Dkt. No. 89 at 4-5). Further, the Union points to the suspension and termination letters themselves, which refer to the "Letter of Agreement," between Plaintiff and the Government, rather than the Medical Staff Bylaws or other Rules and

---

[5] The Memorandum of Understanding states:

> "IT IS UNDERSTOOD by both parties that proceedings of disciplinary action pursuant to the medical staff by-laws or the Division of Prevention, Health Promotion and Protection Rules and Regulations pertaining to professional care of patients shall be the sole responsibility of the Hospital's Medical Staff and the Medical Staff of PHPP subject to the approval of the Hospital Board and/or the Commissioner of Health and shall not be subject to the Grievance and Arbitration Procedure of the Collective Bargaining Agreement between the Seafarers International Union and the Emergency Room Physicians and the Public Health Physicians.

> The Physicians shall have the right to appeal though the Appellate Review Procedure of the Medical Staff By-Laws of the PHPP Rules and Regulations.

(Dkt. No. 36-1 at 39).

Regulations that trigger the Appellate Review procedure. (*Id.*). Dr. Mamouzette also filed a Declaration with the Court, asserting, *inter alia*, that he was never made aware of, or governed by, any Medical Staff Bylaws; and that he was never made aware of Rules and Regulations for the Division of Prevention, Health Promotion and Protection, nor has he heard of such a Division. (Dkt. No. 89-1).

In the TRO proceedings before this Court, the Government did not argue or otherwise assert that Dr. Mamouzette's complaint should have been brought pursuant to the Appellate Review Procedure of the PHPP Rules and Regulations contained in the Memorandum of Understanding in the CBA. Nor is there any indication in the record before this Court that the Government made such an argument before the Arbitrator. Indeed, in its Opposition to Motion to Dismiss Union's Petition for Enforcement of the Arbitrator's Award, the Union asserts that "the Government never once argued or briefed the question of arbitrability on the grounds of alternative review procedures." (Dkt. No. 94-1 at 13-14).  Instead, the Government introduced its argument regarding the PHPP procedures outlined in the MOU "for the first time in a collateral action filed on January 5, 2015, to vacate the [A]rbitrator's award." (Dkt. No. 94-1 at 7, 12, 14).[6] The Government never challenged the Union's assertion in this regard. Given the Government's failure to raise the argument before, the Union argues that "the question of arbitrability should be found equitably waived." (*Id.* at 8).

---

[6] The Government's Superior Court Complaint further evidences the fact that arguments related to the Memorandum of Understanding were not raised before the Arbitrator. (Dkt. No. 8-7 at 7). The Complaint alleges: "In this case, the [A]rbitrator lacked a scintilla of knowledge on what authority the parties to the CBA negotiated as the Memorandum of Understanding at p. 37 of the CBA[,] as it relates to the Public Health Physicians, was not yet presented." (*Id.*).

## II.    APPLICABLE LEGAL PRINCIPLES

The Government seeks to have the Court dismiss Plaintiff's petition for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), on the theory that the incorrect procedure was used for challenging Plaintiff's termination. (Dkt. No. 88 at 7). In considering such a motion, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)). For the Government to prevail on its Rule 12(b)(6) motion, it "must show that the Union cannot prove any set of facts in support of its claim that the arbitration award is enforceable against" the Government. *Int'l Union of Operating Engineers Local 542 v. Williams Equip. Corp.*, 2006 WL 2726839, at *2 (E.D. Pa. Sept. 19, 2006).

A petition to confirm an arbitrator's award is governed by § 9 of the Federal Arbitration Act ("FAA"). 9 U.S.C. § 9. "The statute provides that the district court must grant a petition to confirm an arbitration award if it properly is brought within one year of the date of the award, unless one of the statutory bases for vacating or modifying the award is established." *Ottley v. Schwartzberg*, 819 F.2d 373, 375 (2d Cir. 1987) (citing 9 U.S.C. §§ 10, 11).[7] "'[T]he confirmation

---

[7] An award may be vacated where: (1) "the award was procured by corruption, fraud, or undue means"; (2)  "there was evident partiality or corruption in the arbitrators, or either of them"; (3) "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made"; or "upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5." 9 U.S.C. § 10. An award may be modified where: "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property

of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *Id.* at 377 (quoting *Florasynth, Inc. v. Pickholz,* 750 F.2d 171, 176 (2d Cir. 1984)). Judicial review of arbitration pursuant to a CBA is very limited, and focuses on whether the arbitrator's decision exceeded his authority under the CBA. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam); *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs,* 357 F.3d 272, 279 (3d Cir. 2004). Such review is deferential, and the Court's task is to ensure that the award draws its essence from the collective bargaining agreement—not to correct factual or legal errors made by the arbitrator. *Major League Baseball Players Ass'n*, 357 F.3d at 279-80. Further, the question of who has the power to decide substantive arbitrability (i.e. whether the parties have entered into an arbitration agreement that covers the specific controversy) is determined by the agreement of the parties and where the agreement does not address that question, the question of arbitrability is for the Court to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 761 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 40 (2016).

### A. *Colorado River* Abstention

Federal courts are under "a strict duty to exercise the jurisdiction conferred upon them by Congress," tempered only in those instances where "denying a federal forum would clearly serve an important countervailing interest." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Plaintiff asserts that this Court should exercise jurisdiction over the instant action under the first to file rule as articulated in *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941).

---

referred to in the award"; "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted"; or "the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11.

(Dkt. Nos. 48 at 13; 94-1 at 10-11). The first filed rule, however, is one of deference between two suits filed in different federal courts, and is therefore, inapplicable to the case at bar. *Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 502 F. App'x 201, 205 (3d Cir. 2012) ("the first-filed rule ordinarily counsels deference to the suit that was filed first, when two lawsuits involving the same issues and parties are pending in separate federal district courts") (citing *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988)). The general rule, applicable here, is that parallel proceedings in state and federal courts do not disturb the jurisdiction of either court. *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 330 (3d Cir. 2007).

The question, therefore, is whether this Court should abstain from adjudicating this matter in deference to the Superior Court action. *Colorado River* abstention allows federal courts to abstain from adjudicating a case where there are ongoing parallel state court proceedings. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The task under *Colorado River* is for the court to "ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice . . . to justify the *surrender* of [federal] jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (emphasis in original). *Colorado River* abstention is the appropriate doctrine under which to determine if a federal court should cede an arbitration question to a state court. *See, e.g.*, *Cone*, 460 U.S. at 16; *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.*, 438 F.3d 298 (3d Cir. 2006) (upholding District Court's decision not to abstain from confirming arbitrator's award despite pending action to vacate in state court).

*Colorado River* abstention involves a two-pronged inquiry. The first prong requires a court to determine if the state and federal actions are parallel, "defined as involving the same parties and claims." *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997). Courts then look to whether

12

"extraordinary circumstances" are present such that abstention is warranted. *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.,* 571 F.3d 299, 308 (3d Cir. 2009). A six factor inquiry has been developed in the Third Circuit for analyzing whether a given action presents such extraordinary circumstances:

> (1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

*Nationwide*, 571 F.3d at 308 (quoting *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999)).

Thus, proceedings must be parallel and extraordinary circumstances must be present in order for a federal court to properly abstain from adjudicating a matter before it. *See id.* (finding that "extraordinary circumstances" were not present and overruling district court's abstention). This balancing is "heavily weighted in favor of the exercise of jurisdiction." *Cone*, 460 U.S. at 16. "'Only the clearest of justifications will warrant dismissal.'" *Id.* (quoting *Colorado River*, 424 U.S. at 819 (1976)).

**B.    Judicial Estoppel**

Judicial estoppel "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich,* 530 U.S. 211, 227, n.8 (2000)). The doctrine exists to safeguard the integrity of the judicial process by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* (quoting *United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir. 1993)). Accordingly, it may be appropriate not to apply the doctrine "when a party's prior position was based on inadvertence or

mistake." *Id.* at 753 (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.,* 65 F.3d 26, 29 (4th Cir. 1995)).

As an equitable doctrine, judicial estoppel may be invoked at the Court's discretion, and "'the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.'" *Id.* at 750 (quoting *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir. 1982) (internal alterations omitted)). However, three factors generally inform the court's application of the doctrine: (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party succeeded in persuading a court to accept its earlier position; and (3) whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-51.

### C.    Law of the Case

"[A] fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive." *Arizona v. California*, 460 U.S. 605, 619 (1983). "Under [the law of the case] doctrine, a court should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997). "This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Am. Civil Liberties Union v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816 (1988) (citation and quotation marks omitted). A court may, however, reconsider issues previously resolved if "extraordinary circumstances" are present. *Id.* at 188. "Extraordinary circumstances" exist where "(1) there has been an intervening change in the law; (2) new evidence has become available; or (3) reconsideration is necessary to

prevent clear error or a manifest injustice." *Id.* (quoting *Council of Alternative Political Parties v. Hooks,* 179 F.3d 64, 69 (3d Cir. 1999)).

### D.    Exhaustion of Administrative Remedies

"Only after all agreed [administrative] remedies have been exhausted may a litigant proceed in court." 3 Commercial Arbitration § 63:9. The exhaustion requirement "rests on the premise that it is more efficient to allow the administrative process to go forward without interruption than to permit parties to involve the court at various intermediate intervals." *LaVallee Northside Civic Ass'n v. Virgin Islands Coastal Zone Mgmt. Com.*, 866 F.2d 616, 620 (3d Cir. 1989); *Mamouzette v. Jerome*, 2014 WL 211402, at *3 (D.V.I. Jan. 19, 2014).

There exists "a strong national policy favoring the resolution of disputes by arbitration and a presumption that when an arbitration clause in a contract is present, a grievance is arbitrable unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Pittsburgh Metro Area Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 938 F. Supp. 2d 555, 559 (W.D. Pa. 2013) (quoting *Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Mach. Workers of Am., Local 610*, 900 F.2d 608, 615 (3d Cir. 1990) and *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied–Indus. & Serv. Workers Local Union 943 v. E.I. DuPont de Nemours & Co.,* 338 F. App'x. 209, 213 (3d Cir. 2009) (internal citation and quotation marks omitted)). Where there is an administrative process available "that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000); *see also McDaniels v. Flick,* 59 F.3d 446, 460 (3d Cir. 1995); *Mamouzette*, 2014 WL 211402, at *5. Where a party has complied with the requisite administrative procedures,

and obtained whatever those procedures prescribe as a final determination, then a court of competent jurisdiction may review the matter.

### E.    Enforcement of Arbitration Award

Where parties agree to enforcement of arbitration in any court of competent jurisdiction, a controversy meeting the requirements of federal jurisdiction may be adjudicated by a federal district court. *S. Shore Ranches, LLC v. Lakelands Co., LLC*, 2009 WL 1357436, at *4 (E.D. Cal. May 13, 2009); *Dan River, Inc. v. Cal-Togs, Inc.*, 451 F. Supp. 497, 501 (S.D.N.Y. 1978). It is well settled law that, "where the court has authority under the statute . . . to make an order for arbitration, the court also has authority to confirm the award." *Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 275–76 (1932); *see also Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 202 (2000).

"Judicial review of a labor-arbitration pursuant to [a collective bargaining] agreement is very limited." *Garvey*, 532 U.S. at 509. A reviewing court's first task is to examine whether the arbitrator's decision exceeded his authority. *Major League Umpires Ass'n,* 357 F.3d at 279. Once satisfied that the arbitrator did not exceed its authority, the Court then reviews the outcome of the arbitration. *Id.* at 279-80. However, a court may not "review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Garvey*, 532 U.S. at 509. As long as "an arbitration award draws its essence from the collective bargaining agreement, a court should uphold it." *Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S.P.S.*, 272 F.3d 182, 185 (3d Cir. 2001). "An award may fairly be said to 'draw[ ] its essence from the bargaining agreement if the interpretation can in *any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention.'" *Major League Umpires Ass'n,* 357 F.3d at 280 (quoting *United Transportation Union*

16

*Local 1589 v. Suburban Transit Corp.,* 51 F.3d 376, 379–80 (3d Cir. 1995) (emphasis in original)). Further, a party's failure to object before the arbitrator on the grounds of procedural arbitrability (e.g. waiver, delay, and compliance with procedural prerequisites to arbitration) results in a waiver of the party's ability to subsequently challenge that issue in court. *Langlais v. Pennmont Ben. Servs., Inc.,* 527 F. App'x 215, 218-19 (3d Cir. 2013) (citing *Teamsters Local Union No. 764 v. J.H. Merritt & Co.,* 770 F.2d 40, 42 (3d Cir. 1985)).

### III.    DISCUSSION

On behalf of Plaintiff Mamouzette, the Union argues that the Arbitrator's award should be enforced, because it draws its essence from the parties' agreement, which the Arbitrator correctly interpreted. (Dkt. No. 48 at 13). It argues that "Defendant was afforded ample opportunity to defend its position" during the time this matter was before the Arbitrator, and instead "often chose not to participate in good faith." (*Id.*). For those reasons, the Union asserts that Plaintiff Mamouzette is entitled to enforcement of the award pursuant to the Federal Arbitration Act. (*Id.*).

The Government asserts that this matter should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkt. No. 88 at 7). The argument is threefold. First, the Government argues that because its Complaint seeking to vacate the Arbitrator's award in Superior Court was filed before Plaintiff's Petition to Confirm, "Plaintiff should be precluded from having his case heard in this Court while other matters are pending" to prevent "multiple, possibly conflicting rulings, which the law forbids." (*Id.* at 8-9). Second, the Government argues that Plaintiff still has not exhausted his administrative remedies, claiming— for the first time before this Court—that Plaintiff's grievance should have been brought pursuant to the Memorandum of Understanding contained in the CBA rather than the grievance and arbitration procedures contained in Article X of the CBA. (*Id.* at 9-10). Finally, Defendants assert

that the arbitration award may not be enforced against the individual defendants (i.e. Darice Plaskett, Dr. Marc Jerome, and Dr. Ronald Anders) because, *inter alia*, the Arbitrator's award was entered against the Department of Health, and not the individual defendants, who were not parties to the arbitration. (*Id.* at 10-12).

As discussed below, the Court concludes that there is a proper basis for the Court's exercise of jurisdiction over this matter notwithstanding the pending Superior Court action, and that Plaintiff's Petition sets forth appropriate grounds for enforcement of the Arbitrator's award. Accordingly, the Court will issue an Order denying Defendant's Motion to Dismiss, confirming the Arbitrator's award and entering judgment in favor of Plaintiff.

### A.    Defendants' Motion to Dismiss

#### 1.    Abstention

As this case now involves proceedings in both federal and local court with regard to the same matter, *Colorado River* abstention is the appropriate doctrine under which to determine whether the Court should adjudicate the case at bar.

Addressing the first prong of the *Colorado River* abstention doctrine, the Court determines whether the pending actions are parallel. *Ryan*, 115 F.3d at 196. "For judicial proceedings to be parallel, there must be identities of parties, claims, and time." *IFC*, 438 F.3d at 306; *see also Ryan*, 115 F.3d at 196 ("Generally, cases are parallel when they involve the same parties and claims." (citing *Trent v. Dial Medical of Florida, Inc.,* 33 F.3d 217, 224 (3d Cir. 1994)). However, complete identity of parties is not required to satisfy this first prong. Courts look past the names and number of parties in determining whether there is an identity of parties for purposes of the abstention doctrine. *IFC*, 438 F.3d at 30; *Wells Fargo Home Mortg. Inc. v. Sec. Title Guar. Corp. of Baltimore*, 337 F. Supp. 2d 680, 683 (E.D. Pa. 2004) (finding state and federal cases parallel

notwithstanding that there was not complete identity of parties). Further, whether the parties appear in the same litigation posture in the two suits is not dispositive in the identity of parties analysis. In both *Colorado River* and *Cone* the Supreme Court found proceedings to be parallel where the federal plaintiffs appeared as defendants and the federal defendants as plaintiffs in the state case. *Cone,* 460 U.S. at 7; *Colorado River,* 424 U.S. at 805–06. Finally, with regard to claims, substantially identical claims are those raising "'nearly identical allegations and issues.'" *IFC*, 438 F.3d at 306 (quoting *Yang v. Tsui,* 416 F.3d 199, 204 n.5 (3d Cir. 2005)); *see Wells Fargo*, 337 F. Supp. 2d at 683 (finding state and federal cases parallel, notwithstanding that some federal claims were not raised in the state action). Employing "substantially different 'approaches'" and the possibility of achieving "'potentially different results'" does not necessarily bar a finding that claims are substantially identical. *Trent,* 33 F.3d at 224 (citing *Complaint of Bankers Trust Co. v. Chatterjee,* 636 F.2d 37, 41 (3d Cir. 1980)).

The Superior Court action involves the Government of the Virgin Islands, Department of Health as the plaintiff, and the Union, on behalf of Dr. Mamouzette, as the defendant. (Dkt. No. 88-6 at 1). Those parties are present in the instant action as defendant and plaintiffs, respectively,[8] together with the Virgin Islands Board of Medical Examiners and certain persons in their individual and official capacities as defendants.[9] While there are additional defendants in this action that are not named in the Superior Court case, this is of no import. *See Ryan*, 115 F.3d at

---

[8] The only differences are the specification of the particular agency in the Superior Court action—the Department of Health—rather than the general reference to the Government of the Virgin Islands in this action, and the fact that both the Union and Dr. Mamouzette are parties to this action.

[9] The individual defendants are: Marc A. Jerome, individually and in his official capacity as the Territorial Medical Director; Ronald Anders, individually and in his official capacity as Chief of Obstetrics and Gynecology at Governor Juan F. Luis Hospital; Darice Plaskett, individually and in her official capacity as the Commissioner of the Department of Health, and five unnamed defendants.

196 (finding cases to be parallel over appellant's argument that identity of parties did not exist due to the presence of third party defendants in state suit that might not be joined in the federal suit as a result of statute of limitations and service of process issues). This is especially so here where the only parties directly affected by the resolution of the instant Petition and Motion are the Union, Dr. Mamouzette, and the Virgin Islands Government, through its Department of Health—parties that are present and/or represented in both actions.[10] Thus, there is an identity of parties for purposes of determining whether the pending actions are parallel.

Having found the parties to be sufficiently identical, the Court will now determine whether the claims are "substantially identical." The Superior Court action seeks to vacate the Arbitrator's award under a number of legal theories, premised on the contention that the Arbitrator exceeded his authority by employing the wrong process under the CBA. (Dkt. Nos. 86-6; 86-7). Plaintiff's Petition to Confirm seeks to enforce the Arbitrator's award against the Government of the Virgin Islands. The Court finds that the claims, which arise from the same operative facts, are substantially identical. *See Wells Fargo*, 337 F. Supp. 2d at 683. In both actions, the validity of the Arbitrator's award is at issue, and the result will be that the award will either be enforced or vacated. Thus, there is an identity of claims for purposes of the parallel action analysis.

Finally, there is an identity of time. The Superior Court action seeking to vacate the Arbitrator's award was filed shortly before Plaintiff filed his Petition to Confirm the award. Both matters are currently pending, providing an identity of time. *IFC*, 438 F.3d at 306.

In view of the identities of parties, claims, and time, the Court concludes that the actions are parallel. Thus, the first prong of the abstention doctrine is satisfied.

---

[10] Indeed, the Government has argued herein that the additional defendants were not parties to the arbitration, and thus the arbitration award may not be enforced against them. (Dkt. Nos. 48-1 at 47; 88 at 10-12).

The Court now turns to the second prong of the abstention doctrine—whether "extraordinary circumstances" are present such that abstention is warranted. As the Third Circuit made clear in *Ryan*, "our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Ryan*, 115 F.3d at 197 (citing *Cone*, 460 U.S. at 25–26). A consideration of the relevant factors that bear on the case counsels against abstention.

First, neither party has argued—or even suggested—that the federal forum is less convenient to the parties than the Superior Court. Nor can the Court discern how such a claim could even be colorable. Thus, this factor weighs against abstention.

Second, as this case presents an issue regarding enforcement of an arbitration award, arguments that abstention is warranted in order to avoid piecemeal litigation are unavailing. *Cone*, 460 U.S. at 19. As a general matter, in order for this factor to carry any real weight, there must be "a strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review." *Ryan*, 115 F.3d at 198 (emphasis in original). There is not only an absence of "a strongly articulated *congressional policy* against piecemeal litigation" with respect to arbitration, the FAA "expressly *requires* piecemeal adjudication of certain disputes when necessary to enforce an agreement to arbitrate." *Id.* at 197-8 (emphases in original).[11] In any event, under the particular circumstances here, unnecessary piecemeal litigation is fostered—not avoided—by the Government's pursuit of an action to vacate the Arbitrator's award in a different

---

[11] Piecemeal litigation is inherent in the notion that arbitration takes place in one forum and then the award "shall be enforceable in any court of competent jurisdiction." (Dkt. No. 36-1 at 24). Further, where the parties have not explicitly agreed for the Arbitrator to determine the question of arbitrability, the Court determines that issue independently of the remaining issues that the parties have agreed to arbitrate. *Howsam*, 537 U.S. at 83; *First Options*, 514 U.S. at 943.

court from the one in which the original action was initiated and which ordered that the arbitration procedure had to be exhausted. Accordingly, this factor weighs against the Court abstaining from adjudicating the matter before it.

Third, while the Union's argument rests largely on the first to file theory, the "order in which jurisdiction was obtained" factor involves more than a simple mechanical comparison of the date on which each case was filed. *See Cone,* 460 U.S. at 21 (defendant's first filed argument "gives too mechanical a reading to the 'priority' element of the *Colorado River* balance"). The task of the Court is to consider the relative progress made in each case, the time of filing, and any "duplicative judicial effort" that might result from federal adjudication of the case. *Nationwide*, 571 F.3d at 309.

The Government filed an action to vacate the Arbitrator's award in Superior Court on January 23, 2015, while Plaintiff did not file his Petition to Confirm the award in this Court until February 12, 2015. (Dkt. Nos. 48; 88 at 8-9). However, this Court has had jurisdiction over this matter since the Complaint and motion for a TRO were filed in December of 2013. (Dkt. No. 1). In the context of these earlier proceedings, there were written submissions to the Court, as well as oral argument and representations by counsel at the hearing on the TRO. This Court ultimately denied Plaintiff's request for a TRO for failure to exhaust administrative remedies by complying with the arbitration procedures set forth in the CBA. *Mamouzette v. Jerome*, 2014 WL 211402, at *7 (D.V.I. Jan. 19, 2014). In so ruling, the Court concluded—consistent with Defendants' arguments—that the grievance/arbitration procedure was the sole avenue for resolution of the matter because the propriety of Plaintiff's termination fell within the category of disputes arising under the CBA. *Id.* at *4. Dr. Mamouzette's Complaint remained on this Court's docket; the case was not dismissed. Thus, under the circumstances here, any duplicative judicial effort would result

22

from a new action in another forum—as the Government has done by filing a case in the Superior Court—rather than from continuing the previously filed action in this Court.

Further, as a general principle, "[a] federal court has jurisdiction of a proceeding to confirm an arbitration award, notwithstanding the existence of state court proceedings, except where the state court has proceeded so far in the supervision of an arbitration proceeding that it would be an abuse of discretion for the federal court to intrude." 3 Fed. Proc., L. Ed. § 4:84. The procedural posture of this case does not present such a scenario. A review of the relevant docket (SX-15-cv-14) reveals that, while—as here—there has been briefing by the parties on the issue of the Arbitrator's award, it does not appear—unlike here—that the Superior Court has otherwise held any hearings, or issued any decisions in that matter. Thus, there is no indication that duplicative judicial effort will result from allowing Plaintiff's Petition to Confirm the Arbitrator's Award to proceed in this federal forum. *See Nationwide*, 571 F.3d at 309 (overturning District Court's abstention under *Colorado River*, finding that the state court's consideration of the arbitration issue was not so far advanced, and little duplicative judicial effort would result from allowing the matter to proceed in a federal forum). To the contrary, as noted above, any duplicative effort and potentially conflicting rulings would result from having the Superior Court start anew on a subject matter—namely the arbitrability of Plaintiff's claim—on which this Court has already opined.

In short, for these various reasons, the order of jurisdiction factor weighs against abstention.

The next factor, whether federal or state law controls, focuses on whether federal law issues exist in the case. "As *Cone* made clear, while the presence of federal issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arises entirely under state law." *Ryan*, 115 F.3d at 199 (citing *Cone*, 460 U.S. at 26). The Supreme Court

has cautioned that the latter situation—abstention based on the presence of state law—should arise only in "rare circumstances." *Id.* at 200 (citing *Cone*, 460 U.S. at 26).[12]

In the case at bar, the enforceability of the Arbitrator's award is governed by § 9 of the FAA. 9 U.S.C. § 9. The source of controlling law factor has been considered neutral where an agreement's enforceability was governed by the FAA, but the agreement contained a choice of law clause selecting state law. *Nationwide*, 571 F.3d at 308. However, the CBA does not have a choice of law clause within its arbitration provisions or otherwise. (*See* Dkt. 36-1). The only relevant local statutes referenced by either party with regard to the enforceability of the Arbitrator's award are 24 V.I.C. §§ 374(d) and 383, neither of which can be deemed to render local law "controlling" for purposes of the abstention analysis. (Dkt. Nos. 48 at 12; 88 at 9).[13] Even with the presence of local contract law and language interpretation issues, this is not one of those "rare circumstances" where the existence of controlling local law weighs in favor of abstention. *See Ryan*, 115 F.3d at 200 (citing *Cone*, 460 U.S. at 26).

The final factor looks to whether the state court will adequately protect the interests of the parties. This factor is typically relevant only "when the state forum is *in*adequate," such as where it cannot order the relief sought. *Ryan*, 115 F.3d at 200 (emphasis in original). This is not the case

---

[12] In one such rare circumstance, the Second Circuit found abstention was warranted where several hundred plaintiffs sued the City of New York and public utility companies for losses associated with a several-days long blackout, raising novel issues of state law. *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y.*, 762 F.2d 205, 211 (2d Cir. 1985).

[13] Section 374(d) provides that an employee may not "avail himself of more than one grievance procedure for the resolution of a particular grievance and/or dispute." 24 V.I.C. § 374(d). This provision of Virgin Islands law is not applicable here, as Plaintiff is not seeking to avail himself of more than one grievance procedure. Section 383 provides that "[s]uits for violation of contracts between a public employer and an exclusive representative, or between labor organizations, may be brought in any court of this Territory having jurisdiction of the parties, including the Federal District Court." 24 V.I.C. § 383. This provision, much like the FAA, provides for concurrent federal and state jurisdiction.

here. However, "the mere fact that the state forum is adequate does not counsel in favor of abstention." *Id.* Generally, this factor does not provide much guidance in an arbitration matter "because the FAA grants concurrent jurisdiction to federal and state courts and thus expressly contemplates the state court as an adequate forum for adjudication." *Nationwide*, 571 F.3d at 308. This Court and the Superior Court have jurisdiction to enforce or vacate arbitration awards under both the FAA and the CBA. (Dkt. No. 48 at 12). Because there is no issue regarding the adequacy of the local court, this factor is neutral. *Ryan*, 115 F.3d at 200; *Nihon Tsushin Kabushiki Kaisha v. Davidson*, 595 F. Supp. 2d 363, 370 (D. Del. 2009) ("absent any evidence that the [state] forum is inadequate . . . the Court concludes that the sixth *Colorado River* factor weighs evenly in favor of and against abstention.").

All of the applicable *Colorado River* factors either weigh against abstention or are neutral.[14] Accordingly, the Court finds that the Government has not met the high burden of showing "exceptional" circumstances that would justify abstention. *Ryan*, 115 F.3d at 197. Because the facts here do not present the kind of "exceptional" circumstances necessary to "justify the *surrender* of [federal] jurisdiction," the Court will proceed to adjudicate the merits of Plaintiff's petition. *Ryan*, 115 F.3d at 197 (citing *Cone*, 460 U.S. at 25–26).

### 2. Judicial Estoppel

Although the considerations enumerated above that inform whether the doctrine of judicial estoppel may be appropriately invoked (*see* section II.B., *supra*), are neither exclusive nor inflexible, they provide a sufficient basis for this Court to apply the doctrine of judicial estoppel in this instance. *New Hampshire*, 532 U.S. at 751.

---

[14] The only remaining factor—which court first assumed jurisdiction over [the] property—applies only in *in rem* cases, and is therefore inapplicable to the instant matter.

25

First, the Government's current position that Plaintiff's grievance should have been brought pursuant to the "Appellate Review Procedure of the PHPP Rules and Regulations" (Dkt. No. 88 at 6-7), is "clearly inconsistent" with its written and oral representations to this Court that the grievance procedure of Article X of the CBA was the appropriate procedure for Plaintiff to follow. (Dkt. Nos. 26 at 5; 32 at 2; 45 at 153). While the Memorandum of Understanding from which the Appellate Review procedure stems is contained within the CBA, the Memorandum of Understanding explicitly states that actions that fall under the scope of the Appellate Review Procedure "shall not be subject to the Grievance and Arbitration Procedure of the Collective Bargaining Agreement . . ." (Dkt. No. 36-1 at 43; *see* n.6, *supra*). The Government's earlier position is therefore in direct conflict with its current position.

Second, the Government persuaded this Court to accept its earlier position, as evidenced by the Court's conclusion that the arbitration procedure was the sole avenue for resolution of the dispute. *Mamouzette*, 2014 WL 211402, at *4. Further, in the face of Plaintiff's contention that the Government had repudiated the CBA, the Court again relied on the Government's written submissions, together with its oral representation at the TRO hearing that it "fully intend[ed] to pursue the arbitration process as set forth in the CBA." *Id.* at *5; (January 14, 2014 Tr. at 163:10-18). In this regard, the Court concluded: "Given Defendants' filings and representations in this matter, there is no evidence of repudiation that warrants estoppel or negation of the required arbitration provision of the CBA." *Id.*[15]

---

[15] In view of the Government's written and oral representations, there is no basis to conclude that the Government's earlier position was the product of inadvertence or mistake. *See New Hampshire*, 532 U.S. at 743. If it were, one would have expected that the Court's obvious reliance on those representations would have triggered a response from the Government advising the Court that the Government's position was mistaken, and therefore the Court should reconsider its ruling in light of the Government's new position. Instead, the Government simply allowed the arbitration process to proceed without full participation on its part. Then, after receiving an adverse ruling from the

Finally, the Government's new position with regard to the PHPP Appellate Review Procedure, if allowed to be presented to this Court, would give the Government an unfair advantage and impose an unfair detriment on Plaintiff. *New Hampshire*, 532 U.S. at 751. The Government would receive an unfair advantage by getting a second bite at the apple as it seeks to avoid an adverse ruling by the Arbitrator, after advocating in favor of arbitration and after Plaintiff expended the time and expense of pursuing arbitration. Plaintiff would suffer an unfair detriment by being forced to relitigate issues in order to avoid having to start the grievance process anew in a different forum, after having pursued the arbitration process demanded by the Government and ordered by the Court, and after having obtained a favorable award from the Arbitrator.

In sum, all three of the factors identified by the Supreme Court in *New Hampshire v. Maine* tip the balance of equities strongly in favor of invoking the doctrine of judicial estoppel. 532 U.S. at 750-51. The Court previously stated that it would "hold Defendants to their representations," and it intends to do so. Accordingly, the Court concludes that the Government is judicially estopped from arguing that Plaintiff's grievance should have been pursued under the "Appellate Review Procedure of the PHPP Rules and Regulations."

### 3. Law of the Case

In ruling on Plaintiff's request for a TRO, the Court concluded: "As contemplated in the parties' CBA, arbitration is the proper venue for Plaintiff to raise the claims pleaded in the instant suit." *Mamouzette*, 2014 WL 211402, at *4. In interpreting the CBA, the Court held that "[t]he

---

Arbitrator, the Government sought to vacate the Arbitrator's award in the Superior Court and opposed Plaintiff's attempt to enforce the award in this Court, while seemingly pretending that its earlier representations never occurred. Indeed, the Government does not even mention the earlier proceedings that took place in this Court. The intentionality of the Government's conduct is not lost on the Court. To the contrary, it appears that the Government "deliberately change[d] positions according to the exigencies of the moment." *Id.* at 749 (quoting *McCaskey,* 9 F.3d at 378).

propriety of Plaintiff's termination . . . falls squarely into the category of disputes arising under the CBA for which the grievance procedure is the sole avenue for resolution," and that "Article X of the CBA" provides a grievance procedure by which the Union "may file for arbitration of grievances not satisfactorily resolved with the Commissioner of Health." *Id.* at *5. The Government advocated in support of this position.

Incredibly, the Government now asserts that any appeal of Plaintiff's termination should have been brought through the "Appellate Review Procedure of the PHPP Rules and Regulations" of the CBA, and that the CBA deprived Plaintiff of the ability to file a grievance with the Government in the first place. (Dkt. No. 88 at 6-7). As noted earlier, this argument flies in the face of the position advocated by the Government in opposition to Plaintiff's request for a TRO, wherein Defendants argued that Plaintiff "was required to follow the grievance procedures outlined in the CBA" and that "Article X, Section 2 of Plaintiff's CBA states that the grievance procedure 'shall be the exclusive means of settlement of all grievances arising under this agreement.'" (Dkt. No. 26 at 5; Dkt. No. 32 at 2). Further, Defendants "indicated at the January 14, 2014 hearing that they fully intend[ed] to pursue the arbitration process as set forth in the CBA." *Mamouzette*, 2014 WL 211402, at *5; (January 14, 2014 Tr. at 163:10-18).

In the absence of clear and unmistakable evidence that the CBA reflected the parties' intent that the issue of arbitrability be decided by the Arbitrator, that issue is to be resolved by the Court. *First Options*, 514 U.S. at 943-44. No such evidence of the parties' intent was presented to the Court, and the CBA does not reflect such intent. (*See* Dkt. No. 36-1). Thus, the Court resolved the issue of arbitrability in its January 19, 2014 Opinion and set forth the appropriate procedure for exhausting administrative remedies under the CBA. *Mamouzette*, 2014 WL 211402, at *5-6.

In view of the foregoing, the Government's belated argument that the Appellate Review Procedures should have been pursued, rather than the grievance and arbitration procedures outlined in Article X of the CBA, violates the law of the case doctrine. *See Agostini*, 521 U.S. at 236; *Arizona v. California*, 460 U.S. at 619; *Mukasey*, 534 F.3d at 187. In addition, it appears from the record that the Government failed to argue before the Arbitrator that the CBA was not the proper procedure or that the Arbitrator lacked authority to arbitrate Plaintiffs' grievance, thereby waiving such arguments. (Dkt. Nos. 48-1 at 37; 88-7 at 7); *see Langlais,* 527 F. App'x at 218; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Neville Chem. Co.*, 298 F. App'x 209, 212 (3d Cir. 2008) ("'[t]he long-established federal policy of settling disputes by arbitration would be seriously undermined if parties kept available information from the Arbitrator and then attempted to use the information as a defense to compliance with an adverse award.'" (quoting *United Food & Commercial Workers Union Local 1776 v. Excel Corp.*, 470 F.3d 143, 149 (3d Cir. 2006)).

The Government's Motion to Dismiss does not address the issue of reconsideration, let alone advance any arguments which suggest that "extraordinary circumstances" exist—in the form of an intervening change in controlling law, new evidence, clear error, or manifest injustice—that warrant reopening the issue of the appropriate procedure through which Plaintiff should address his employment issues. *See Mukasey*, 534 F.3d at 187. As such, the Court will not reconsider its earlier ruling regarding the arbitrability of Plaintiff's claims. *See Agostini*, 521 U.S. at 236.[16]

---

[16] While the Court will not engage in a merits review of the Government's new argument, the Court is struck by the implausibility, on its face, of the argument. The Memorandum of Understanding relied upon by the Government states that "proceedings of disciplinary action pursuant to the medical staff by-laws or the Division of Prevention, Health Promotion and Protection rules pertaining to the professional care of patients . . . shall not be subject to the Grievance and Arbitration Procedure of the CBA." (Dkt. No. 88-5). However, the termination letter sent from Governor John de Jongh to Dr. Mamouzette states that "[t]he Department [of

This case represents a prime example of why the doctrines of law of the case and judicial estoppel—grounded in the principles of finality of judgments and integrity of the judicial process—are so important. Here, after advocating for a particular position in this Court, persuading the Court that the position was the legally correct one, and representing that it would act in accordance with that position, the Government inexplicably changed course, acted contrary to its representations, sought relief in another court designed to nullify the results of the process it had advocated for in this Court, and now argues before this Court in support of a position that is inconsistent with the one originally advanced. If there ever was a need to apply the doctrines of law of the case and judicial estoppel, this is it—and the Court will do so here.

As the Court explicitly noted in its January 19, 2014 Opinion, it "will hold Defendants to their representations" that they would pursue the arbitration process set forth in the CBA. *Mamouzette*, 2014 WL 211402, at *5. With that arbitration process now completed, the Court rejects the Government's unexplained attempt to reverse course at this late stage. Accordingly, the Government's Motion to Dismiss will be denied.

**B.    Plaintiff's Petition to Confirm the Arbitrator's Award**

**1.    Exhaustion of Administrative Remedies**

Unlike at the time of his request for a TRO, Plaintiff has now availed himself of the process contemplated by the CBA, and obtained a final determination from the Arbitrator. (Dkt. No. 48-1

---

Health] recommended your termination *based on your breach of the terms of the Letter of Agreement* between yourself and the Government of the Virgin Islands, Department of Health." (Dkt. No. 24-1) (emphasis added). This express language seemingly undermines the Government's contention that Plaintiff's termination constitutes a "disciplinary action" that was brought *pursuant to* either set of rules referred to in the Memorandum of Understanding. (*See* Dkt. No. 88-5) In any event, the Court concludes that the doctrines of judicial estoppel and law of the case render unnecessary any review of the merits of the Government's new argument.

at 19-47). Despite the Government's apparent displeasure with the result, the Government can hardly be heard to complain about the Arbitrator's decision to render a ruling based on the written record—comprised of the parties' "substantial pleadings, motions and exhibits received [as of September 7, 2014] and any subsequently received pleadings, motions and exhibits." (Dkt. No. 48-1 at 49). The Arbitrator noted that this method of proceeding was necessitated by the fact that the Government had "never, on the record before the [Arbitrator], over 10 months time, offered nor agreed to a hearing date" notwithstanding "hav[ing] been offered 49 hearing dates for this matter."(Dkt. No. 48-1 at 38).[17] Under the circumstances here, Plaintiff has exhausted his administrative remedies under the CBA—which clearly indicates that "[t]he Arbitrator's award . . . . shall be final and binding on the aggrieved employee or employees, the Union, and the Employer and shall be enforceable in any court of competent jurisdiction." (Dkt. No. 36-1 at 24).

The Government argues that because it filed an action in the Superior Court to vacate the Arbitrator's award, Plaintiff should be precluded from continuing to pursue his claim in federal court. In support of this assertion, the Government relies on 24 V.I.C. § 374(d) for the proposition that "no employee may avail himself of more than one grievance procedure for the resolution of a particular grievance." However, Plaintiff has not violated this statutory provision. Plaintiff filed a Complaint in this Court together with a Motion for a TRO; the request for a TRO was denied based on Plaintiff's failure to exhaust his administrative remedies pursuant to the CBA (i.e. arbitration); Plaintiff pursued arbitration to its conclusion; and Plaintiff now returns to this Court seeking to

---

[17] The CBA addresses similar recalcitrance by stating:

> The failure of any party or witness to attend an arbitration hearing except as to extraordinary and extenuating circumstances as scheduled by the Arbitrator shall not delay the hearing and the Arbitrator is hereby authorized to proceed to take evidence and to issue an award as though such party or witness was present.

(Dkt. No. 36-1 at 25).

enforce the Arbitrator's award. The Government is the party engaging in forum shopping by seeking to vacate the Arbitrator's award in the Superior Court, thus creating—as the Government decries—the risk of acquiring "multiple, possibly conflicting, rulings, *which the law forbids*." (Dkt. No. 88 at 9) (emphasis added).

Dr. Mamouzette has sought to pursue his claim in federal court since filing a Complaint in December 2013. Denying his request for a TRO, the Court held that "[a]rbitration is [ ] the bargained-for venue for dispute resolution between the parties in this case and offers an avenue for full determination of the merits of the claims." *Mamouzette*, 2014 WL 211402, at *5. The Arbitrator's imposition of an award represents the point at which Dr. Mamouzette's administrative remedies have been exhausted: it is not simply a step in a labyrinthine administrative process involving determinations from multiple adjudicatory bodies on the same issue. Having now exhausted his administrative remedies, Plaintiff's Petition to Confirm the Arbitrator's Award and Direct that Judgment be Granted is properly before this Court.

### 2.    Enforcement of the Arbitration Award

The CBA states that any award rendered pursuant to the agreement "shall be final and binding on the aggrieved employee or employees, the Union, and the Employer and shall be enforceable in any court of competent jurisdiction." (Dkt. No. 36-1 at 24). As a federal court with federal question jurisdiction under 29 U.S.C. § 189(a), this Court is one of competent jurisdiction in the instant matter. However, it is not the place of this court to reevaluate the merits of the Arbitrator's decision. *Garvey*, 532 U.S. at 509. Indeed, the Supreme Court has broadly interpreted this principle, noting that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paper Workers International Union, AFL–*

*CIO v. Misco, Inc.,* 484 U.S. 29, 38 (1987) ("a court should not reject an award on the ground that the arbitrator misread the contract"). As the Government previously acknowledged, "[a]n arbitrator's award must be enforced so long as it draws its essence from the collective bargaining agreement." (Dkt. No. 32 at 3); *see Nat'l Ass'n of Letter Carriers*, 272 F.3d at 185. The Court's role is to ensure that the Arbitrator has not exceeded the scope of his authority, and if his decision is final and binding, to enforce it. *Pittsburgh Metro Area Postal Workers Union*, 938 F. Supp. 2d at 561. An unambiguous award that draws its essence from the agreement is considered final and binding. *Id.*

The Government argues, for the first time before this Court and contrary to its previous assertions, that Article X of the CBA was not the appropriate procedure in this instance, and instead "any appeal regarding Mamouzette's termination should have been brought pursuant to the Appellate Review Procedure of the PHPP Rules and Regulations as outlined in the Memorandum of Understanding contained in the CBA." (Dkt. No. 88 at 6-7). However, as discussed above, the issue of the arbitrability of Plaintiff's termination was previously adjudicated by this Court with the strong support of the Government, and is thus law of the case. In addition, this Court has found that the Government is judicially estopped from advancing a new argument that is inconsistent with its earlier position at this late stage of the case. Further, as asserted by the Union, without response from the Government, "[o]nce the matter was before the Arbitrator, the Government never once argued or briefed the question of arbitrability on the grounds of alternative review procedures." (Dkt. No. 94-1 at 14). As the Government failed to challenge the Arbitrator's authority to adjudicate Plaintiff's grievance during arbitration, any objection to the Arbitrator's jurisdiction is deemed waived. *Langlais,* 527 F. App'x at 218 (citing *Merritt,* 770 F.2d at 42). Accordingly, the Government's new argument is foreclosed.

33

Finally, the Arbitrator's authority to order injunctive relief is a question of CBA interpretation that is to be determined by the Arbitrator. *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 756 (1983). In this case, the Arbitrator determined that he had such authority, and ordered Plaintiff reinstated as of a date certain, with back pay due as of that date. (Dkt. No. 48-1 at 46-47). The propriety of that determination is supported by the Court's earlier decision that the Arbitrator has "authority under the CBA to reverse the suspension and termination decisions, if appropriate, and to order Plaintiff's reinstatement." *Mamouzette*, 2014 WL 211402, at *6 (citing cases); (*See* January 14, 2014 Tr. at 153:22-23, 156:14-25, 157:1-13).

This is exactly the type of unambiguous award that has been found "final and binding." *See, e.g., Pittsburgh Metro Area Postal Workers Union*, 938 F. Supp. 2d at 563. Applying the "singularly undemanding" test of the validity of the Arbitrator's award, the Court concludes that the award "draws its essence from the collective bargaining agreement" and thus should be enforced against the Government of the Virgin Islands. *Major League Umpires Ass'n,* 357 F.3d at 280; *Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S.P.S.*, 272 F.3d 182, 185 (3d Cir. 2001). Accordingly, Plaintiff's Petition to Confirm the Arbitrator's Award and Direct that Judgment Be Entered will be granted.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' Petition states a claim for relief, and the Court has the power to adjudicate it, notwithstanding the pendency of the Government's case in the Superior Court. Plaintiffs' "Petition to Confirm the Arbitrator's Award and Direct that Judgment Be Entered" (Dkt. No. 48) will be granted as against the Government of the Virgin Islands and denied as moot with respect to the individual Defendants and the Virgin Islands Board of Medical

Examiners.[18] The Government's "Motion to Dismiss Petition to Confirm Arbitrator's Award and Direct that Judgment Be Entered and Incorporated Memorandum of Law" (Dkt. No. 88) will be denied.

An appropriate Order accompanies this Memorandum Opinion.

Date:   July 19, 2017                                  _____/s/_____
                                                       WILMA A. LEWIS
                                                       Chief Judge

---

[18] As the Government correctly notes, the individual defendants were not parties to the arbitration nor was the award entered against them. (Dkt. No. 88 at 10-12). Further, Plaintiff has asserted that its Petition is directed only at the Government of the Virgin Islands (Dkt. No. 89 at 9).