**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| MOISE MAMOUZETTE, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| UNITED INDUSTRIAL WORKERS-<br>SEAFARERS INTERNATIONAL UNION, | ) <br> ) <br> ) |
| Intervenor-Plaintiff, | ) <br> ) |
| v. | )    Civil Action No. 2013-0117 <br> ) |
| MARC A. JEROME, Individually and in his official capacity as the Territorial Medical Director; RONALD ANDERS, Individually and in his official capacity as Chief of Obstetrics and Gynecology at Governor Juan F. Luis Hospital; DARICE PLASKETT, Individually and in her official capacity as the Commissioner of the Department of Health; THE VIRGIN ISLANDS BOARD OF MEDICAL EXAMINERS; THE GOVERNMENT OF THE VIRGIN ISLANDS; and DOES 1-5, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**Attorneys:**
**Yohana M. Manning, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**John J. Merchant, Esq.,**
St. Croix, U.S.V.I.
    *For Intervenor-Plaintiff*

**Erika M. Scott, Esq.,**
St. Croix, U.S.V.I.
    *For Defendants*

**Zuleyma M. Chapman, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Darice Plaskett for the Limited*
    *Purpose of the Arbitration Proceeding*

**MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Plaintiff-Intervenor United Industrial Workers-Seafarers International Union's ("Union") "Motion for Order to Show Cause" on behalf of Plaintiff Moise Mamouzette, MD ("Dr. Mamouzette") (Dkt. No. 100) and Defendant Darice Plaskett's ("Plaskett") Opposition thereto (Dkt. No. 104).[1] Also before the Court are the Union's "Submission of Requested Documentation and Briefing of the Court" (Dkt. No. 121), Plaskett's Response thereto (Dkt. Nos. 126, 131), the Union's Reply (Dkt. No. 134), and Plaskett's Sur-Reply (Dkt. No. 137); and Dr. Mamouzette's "Analysis of Arbitration Award, in Support of Reinstatement" (Dkt. No. 123) and Plaskett's Response thereto (Dkt. No. 127).[2]

For the reasons that follow, the Court will deny the Union's Motion for Order to Show Cause (Dkt. No. 100).

### I.   BACKGROUND

Dr. Mamouzette was employed by Defendant Government of the Virgin Islands through the Virgin Islands Department of Health ("DOH"). (Dkt. No. 48 at 2). After practicing medicine in the Territory for four years, Dr. Mamouzette was suspended from his government employment in December 2013—and ultimately terminated—allegedly due to issues involving his certification and qualification for employment with DOH. *Id.* In response, the Union filed a grievance challenging the Government's actions. *Id.* Dr. Mamouzette subsequently filed the instant action—

---

[1] Although styled as a "Motion to Quash Order to Show Cause" (Dkt. No. 104), Plaskett's filing is in reality an Opposition to the Union's Motion for Order to Show Cause.

[2] Plaskett requests that Dr. Mamouzette's Analysis (Dkt. No. 123) be stricken from the record because he did not request leave of Court to file it and because he lacks standing in that he is represented by the Union in this matter. (Dkt. No. 127). The Court will not strike the Analysis. Plaintiff is a party to the proceeding, and the Court will exercise its discretion to allow the filing.

in which the Union intervened—alleging constitutional and other violations stemming from his suspension and termination from employment with DOH, the revocation of his Special Unrestricted License ("SUL") to practice medicine, and attendant circumstances. (Dkt. Nos. 1, 47). Together with the Complaint, Dr. Mamouzette filed a Motion for a Temporary Restraining Order ("TRO") seeking to prohibit Defendants from terminating his employment and revoking his SUL to practice medicine. (Dkt. No. 1).[3]

In addressing the Motion for a TRO, the Court found that "[t]he propriety of [Dr. Mamouzette's] termination . . . falls squarely into the category of disputes arising under the [Collective Bargaining Agreement ("CBA")] for which the grievance procedure is the sole avenue for resolution." *Mamouzette v. Jerome*, 2014 WL 211402, at *4 (D.V.I. Jan. 19, 2014). Accordingly, the Court denied Dr. Mamouzette's request for a TRO, finding that he was required to first exhaust his administrative remedies as set forth in the CBA. *Id.* at *6-7.

After going through the arbitration process, the Arbitrator issued an "Order Based on Party Briefing and Record" ("Award") on October 27, 2014. (Dkt. No. 48-1 at 19-47). In characterizing the issue before him, the Arbitrator concluded that "the matter simply boils down to what was Grievant's '*certification and/or qualification*' status when DOH terminated him." *Id.* at 40 (emphasis in original). The Arbitrator ordered that Dr. Mamouzette be "reinstated effective with his August 25, 2014 submission of certification/qualification supporting documentation to the DOH, specifically: a showing of passing the [American Board of Obstetrics and Gynecology ("ABOG")] written examination, the ABOG's verification of his showing experience in women's

---

[3] In addition to the Government, Dr. Mamouzette also brought this action against various medical officials in their individual and official capacities, the Virgin Islands Board of Medical Examiners, and Does 1-5.

health care, and a passing of the oral examination." *Id*. at 46. The Arbitrator further ordered that "*[i]f* that documentation was provided to the DOH in Grievant's August 25, 2014 submission[,] he is to be reinstated to full benefits and salary starting that date." *Id*. (emphasis added). The Arbitrator stated that this was the "equivalent of a nine month suspension but with reinstatement" because Grievant was aware that "he was not meeting the qualification/certification standard required for his employment." *Id*.

In response to the Arbitrator's ruling, the Union filed in this Court a "Petition to Confirm the Arbitrator's Award and Direct that Judgment Be Entered" on behalf of Dr. Mamouzette. (Dkt. No. 48).[4] The Court confirmed the Award as against the Government of the Virgin Islands, but denied it as moot with respect to the individual Defendants and the Virgin Islands Board of Medical Examiners. *Mamouzette v. Jerome*, 2017 WL 3083628 (D.V.I. July 19, 2017).[5]

The Court's confirmation of the Award eventually precipitated the filing of the Motion currently before the Court. (Dkt. Nos. 100, 104). In its "Motion for Order to Show Cause," the Union requests that the Court require Defendant to "honor" the Court's Order affirming the Arbitrator's Award. (Dkt. No. 100-1). In response, Plaskett argues that Dr. Mamouzette has refused to divulge "pertinent information." (Dkt. No. 104 at 2).

The Court conducted a status conference on March 26, 2018 to address issues pertaining to compliance with the Award. The Union argued that the Court should enforce the Award by ordering DOH to reinstate Dr. Mamouzette. Meanwhile, Defendants argued that, according to the

---

[4] Shortly before the Union's filing, the Government filed a Complaint to vacate the Arbitrator's Award in the Superior Court of the Virgin Islands. (Dkt. No. 88 at 8-9).

[5] The individual defendants were not parties to the arbitration, nor was the Award entered against them. (Dkt. No. 88 at 10-12). Further, the Union asserted that its Petition to this Court was directed only at the Government of the Virgin Islands. (Dkt. No. 89 at 9).

Award, Dr. Mamouzette's reinstatement was conditioned on his August 25, 2014 submission of certification and qualification documents to DOH, including proof that he had passed the ABOG's written and oral examination and had obtained ABOG's verification showing his experience in treating women's health care. Defendants argued that because such documentation was not provided, Defendants were not in violation of the Award, or this Court's confirmation thereof, by not reinstating Dr. Mamouzette effective August 25, 2014.

In light of the parties' differing views as revealed during the colloquy at the status conference, the Court established deadlines for the submission of additional filings to address the parties' respective positions, including a deadline for the submission of the documents required by the Arbitrator's Award. (Dkt. No. 117). The Union did not submit any of the requisite documentation—specifically, evidence that Dr. Mamouzette had passed the ABOG written and oral exams, and that the ABOG had verified Dr. Mamouzette's experience in women's health care. (Dkt. No. 121). Instead, the Union submitted various documents related to Dr. Mamouzette's physician license renewal application, CME credits, claims made by a patient, and malpractice insurance premium payments.[6]

---

[6] The Union submitted the following documents: Dr. Mamouzette's coversheet for his physician license renewal application; a tax clearance letter for submission to his physician licensing authority; an addendum to Dr. Mamouzette's physician license renewal application providing information regarding his termination with DOH; Dr. Mamouzette's completed physician license renewal application form; a transcript of CME credits that Dr. Mamouzette completed on Medscape Education in 2014; a letter responding to a request for information regarding a claim that one of Dr. Mamouzette's patients filed against him; a Motion to Dismiss counter-claims that Dr. Mamouzette's patient made against him; and a letter from Dr. Mamouzette to the "Office of Risk Management" memorializing the cessation of his malpractice insurance premium payments through payroll deduction. (Dkt. No. 121, Ex. 1). The Union also submitted a copy of a check for $1,000 with a copy of an incomplete version of Dr. Mamouzette's physician license renewal application. (Dkt. No. 111-2).

5

The Union requests "that the Arbitration Award be upheld subject to a supplemental inquest, or alternatively upheld in part but modified in the service of procedural justice." (Dkt. No. 121 at 17). Specifically, the Union asks that the Court disregard the submissions required by the Award and independently determine whether Dr. Mamouzette was "Board Eligible" at the time of his termination. *Id*. at 22-26. In response, Plaskett argues that the Union's submission should be stricken from the record for failure to comply with the Court's Order. (Dkt. No. 126 at 1-4).[7] Plaskett further argues that the Union's request to modify the Award is untimely and inconsistent with the facts and law. *Id*. at 7-12.

Upon consideration of the oral arguments at the status conference, the parties' submissions, and the entire record, the Court will deny the Union's Motion for an Order to Show Cause.

## II.  DISCUSSION

The Union concedes that pursuant to the Arbitrator's Award, Dr. Mamouzette is to be reinstated contingent upon his submission of evidence that he had passed the ABOG written and oral examinations and that the ABOG had verified his experience in women's health care. (Dkt. No. 121 at 20-21). The Court directed the Union to submit this documentation by Order entered on April 4, 2018. (Dkt. No. 117). The Union did not submit the required documentation. Instead, the Union asks the Court to supplement or modify the Award by conducting a hearing to determine the "Board Eligible" status of Dr. Mamouzette. *Id.* at 29. The Court will deny the Union's request—and its Motion for Order to Show Cause—because the Union waived the arguments it is currently presenting to the Court and its request to modify the Award is untimely. Further, even if the Union had not waived its arguments and its request to modify the Award was timely, the Court

---

[7] The Court will not strike the Union's submission, but rather will consider it in light of the Court's Order.

6

would not have the authority to supplement or modify the Award. In addition, the Court will exercise its discretion to invoke the doctrine of judicial estoppel to prevent the Union from succeeding here on arguments that are based on a changed position concerning the Award.

### A. Modification of Award

#### 1. Waived Argument

The Union argues that a modification of the Arbitrator's Award is warranted because the Arbitrator made "a material mistake of inference concerning what constitutes a licensee being 'Board Eligible' . . . which infects his final [A]ward and fails to give a basis for relief to Dr. Mamouzette . . . ." (Dkt. No. 121 at 23). The Court finds that the Union has waived this argument. "[T]he failure to pose an *available* argument to the arbitrator waives that argument in collateral proceedings . . . ." *Ganton Techs., Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 358 F.3d 459, 462 (7th Cir. 2004) (emphasis added); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Neville Chem. Co.*, 298 F. App'x 209, 211 (3d Cir. 2008) (concluding that the employer waived an argument in part because the employer failed to raise it during the arbitration despite it being available to him at the time). There is nothing on the record to suggest that the Union voiced any concerns to the Arbitrator regarding the documentation at issue—which the Union believes reflects the Arbitrator's interpretation of what it means to be "Board Eligible." Thus, the Union has waived this argument.

#### 2. Untimely Request

Even assuming that the argument is not waived, the Union's request to modify the Award is untimely. Pursuant to 9 U.S.C. § 12, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed

or delivered." Here, the Arbitrator issued his "Order Based on Party Briefing and Record" on October 27, 2014. (Dkt. No. 48-1 at 19). Instead of seeking modification of the Award, the Union filed a "Petition to Confirm the Arbitrator's Award and Direct that Judgment Be Entered" on February 12, 2015 (Dkt. No. 48), which prompted the Court to confirm the Award (Dkt. No. 97). It was not until April 2018—after the Union requested that the Court require that Defendant "honor" the Court's Order affirming the Arbitrator's Award (Dkt. No. 100-1)—that the Union changed course and sought to modify the Award (Dkt. No. 121). Thus, the Union's request is untimely pursuant to 9 U.S.C. § 12 because it occurred approximately three and a half years after the Award was entered in October 2014, and thus long after the three-month period allowed for such requests.[8]

Accordingly, the Court will deny the Union's requests to modify the Award as untimely.

---

[8] The Union argues that equitable tolling should apply in part because Defendant actively misled the Union by rejecting the documentation that Dr. Mamouzette submitted only after seeking to vacate the Award. (Dkt. No. 121 at 27-28). However, regardless of the circuitous route that Defendant may have taken, the Union was well aware from the outset of the documentation required by the Award, as reflected by the Union's quotation of the portion of the Award that contained the documentation requirement in its Petition to Confirm the Award. (Dkt. No. 48 at 10). Accordingly, the fact that Dr. Mamouzette chose to submit documentation other than that called for by the Award—without timely seeking a modification of the Award—cannot be attributed to any "active misle[ading]" by Defendant.

The Union also cites to *Gov't of Virgin Islands v. United Indus.*, 64 V.I. 312, 331 (2016) for the proposition that the Court is not bound by the Federal Arbitration Act (Dkt. No. 121 at 26-27)— the same Act upon which the Union relied in its Petition to Confirm the Arbitration Award (Dkt. No. 48 at 13). The Union further argues that 9 U.S.C. § 12 does not apply because the Arbitrator purportedly exceeded his authority. (Dkt. No. 121 at 26-27). The Court finds that as a federal court—rather than a state or territorial court—*United Industrial* is inapposite and the Federal Arbitration Act applies here. The Court also notes that it has already determined that the Arbitrator did not exceed his authority when confirming the Award at the Union's request. *Mamouzette*, 2017 WL 3083628, at *16.

### 3. Authority to Modify

Even if the Union could somehow overcome the waiver and timeliness bars—which it cannot—the Union's arguments would still fail on the merits. The Court finds that it does not have the authority to modify the Award because the Award draws its essence from the CBA; the Award is final and binding; and no statutory basis for modifying the Award has been established.

The Union previously filed a Petition to *confirm* the Award. (Dkt. No. 48). In that Petition, the Union quoted a critical portion of the Award that it now seeks to modify: "Grievant is ordered reinstated effective with his August 25, 2014 submission of certification/qualification supporting documentation to the DOH, specifically: a showing of passing the ABOG written examination, the ABOG's verification of his showing experience in treating women's health care, and a passing of the oral examination." (Dkt. No. 48 at 10). The Union also argued in the Petition that "the Award draws its essence from the parties' agreements." *Id*. at 13. Further, the parties' CBA clearly states that "[t]he Arbitrator's award . . . shall be final and binding on the aggrieved employee or employees, the Union, and the Employer and shall be enforceable in any court of competent jurisdiction." (Dkt. No. 36-1 at 24).

"[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 111 (2d Cir. 2016) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)) (quotations omitted). This is precisely what occurred here when the Court confirmed the Award. In granting the Union's Petition to Confirm the Award, the Court found that the Arbitrator did not exceed the scope of his authority; that the Award is unambiguous; that the Award draws its essence from the CBA; and that the Award is final and binding. *Mamouzette*, 2017 WL 3083628, at *15-

16 (citing *Pittsburgh Metro Area Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 938 F. Supp. 2d 555, 561 (W.D. Pa. 2013)). As the Court made clear in its Opinion confirming the Award, the Arbitrator concluded that "the matter simply boils down to what was Grievant's '*certification and/or qualification*' status when DOH terminated him." *Id*. at *3 (quoting Dkt. No. 48-1 at 40) (emphasis in the original). Thus, at the heart of the Arbitrator's Award, and the Court's confirmation thereof, was Dr. Mamouzette's certification/qualification status.

The Court also confirmed the Award recognizing that, pursuant to 9 U.S.C. § 9, it "'must grant a petition to confirm an arbitration award if it properly is brought within one year of the date of the award, unless one of the statutory bases for vacating or modifying the award is established.'" *Mamouzette*, 2017 WL 3083628, at *4 (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 375 (2d Cir. 1987) (citing 9 U.S.C. §§ 10, 11)). In this regard, the Court noted that an award may be modified where: "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award; the arbitrators have awarded upon a matter not submitted to them; or the award is imperfect in matter of form not affecting the merits of the controversy." *Id*. n.7 (citing 9 U.S.C. § 11) (internal quotations omitted).

While the Union previously argued in its Petition to Confirm the Award that "the Award draws its essence from the parties' agreements" (Dkt. No. 48 at 13), it now argues that the Arbitrator stepped "out of his purview of deciding CBA matters to muse about Virgin Islands licensure parameters . . . ." (Dkt. No. 121 at 25). The Union is correct that the Arbitrator did not have authority over licensure decisions, and the Arbitrator so recognized. (Dkt. No. 48-1 at 45) ("I only have jurisdiction to remove the termination . . . and do not have specific jurisdiction over the [Board of Medical Examiners] to re-instate the Grievant's [license.]"); *see also Mamouzette*, 2014 WL 211402, at *6 (citing Dkt. Nos. 31, 32). However, contrary to the Union's contention, the

Arbitrator did not "muse about Virgin Islands licensure parameters." Rather, the Arbitrator focused on the fact that Dr. Mamouzette was "aware, given his ABOG status . . . that he was not meeting the qualification/certification standard required for his employment." (Dkt. No. 48-1 at 40). Thus, the Arbitrator made Dr. Mamouzette's reinstatement contingent upon his submission of specific documentation showing that he met the qualification/certification standard required for his employment—which is undeniably different from making a licensure decision. *Id*. In this regard, the Court has already found—in a ruling that the Union sought—that the Arbitrator did not exceed the scope of his authority and that the Award properly addresses Dr. Mamouzette's termination as set forth in the CBA. *Mamouzette*, 2017 WL 3083628, at *15-16 (citing *Pittsburgh Metro Area Postal Workers Union, AFL-CIO* 938 F. Supp. 2d at 561). Thus, the Court finds that the Union has not established a statutory basis for modifying the Award.

Further, a court may not "review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam). As long as "an arbitration award draws its essence from the collective bargaining agreement, a court should uphold it." *Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S.P.S.*, 272 F.3d 182, 185 (3d Cir. 2001). As previously discussed, the Court has already concluded that the Award "draws its essence from the collective bargaining agreement" and thus should be enforced. *Mamouzette*, 2017 WL 3083628, at *16 (quoting *Major League Umpires Ass'n v. Am. League of Pro. Baseball Clubs*, 357 F.3d 272, 280 (3d Cir. 2004) and *Nat'l Ass'n of Letter Carriers*, 272 F.3d at 185). Conducting a hearing regarding Dr. Mamouzette's "Board Eligible" status and modifying the Award, as the Union suggests, would be inappropriate not only because the Court has "no business weighing the merits of" the Award, *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960), but also because it would

11

be going beyond what was presented to the Arbitrator and thus be an "unwarranted modification of the [Award] inconsistent with [the Court's] limited review under the Federal Arbitration Act," *Menke v. Monchecourt*, 17 F.3d 1007, 1010 (7th Cir. 1994).[9] Therefore, the Court does not have authority to grant the Union's request to review the Award—even based on allegations that the Arbitrator's decision rests on errors. *Garvey*, 532 U.S. at 509.

Accordingly, the Court rejects the Union's various arguments regarding modification of the Award.

B.  **Judicial Estoppel**

The Court also exercises its discretion to invoke the doctrine of judicial estoppel as an independent basis for preventing the Union from succeeding here, because its arguments are based on a changed position concerning the Award.

Judicial estoppel "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227, n.8 (2000)). The doctrine exists to safeguard the integrity of the judicial process by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id*. (quoting *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)). As an equitable doctrine, judicial estoppel may be invoked at the Court's discretion, and "'the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.'" *Id*. at 750 (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th

---

[9] The Union suggests that the Court could conduct a hearing and merely "supplement" the Award. (Dkt. No. 121). However, the Award has a clear condition—that Dr. Mamouzette must submit the required documentation in order to be reinstated. If the Court were to conduct a hearing and find that Dr. Mamouzette could be reinstated without producing that documentation, the Court would be modifying the Award.

Cir. 1982) (internal alterations omitted)). However, three factors generally inform a court's application of the doctrine: (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party succeeded in persuading a court to accept its earlier position; and (3) whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*. at 750-51. Each of these factors is answered in the affirmative here.

First, the Union's current position that the Court should modify the Arbitrator's Award by disregarding the submissions required by the Award and instead determining whether Dr. Mamouzette is "Board Eligible" is "clearly inconsistent" with its earlier position that the Court should confirm the Arbitrator's Award. The Union was aware of the conditions of the Award at the time that it requested confirmation of the Award. Indeed, the Union quoted the portion of the Award that required Dr. Mamouzette to submit certification/qualification documentation as a condition of his reinstatement. (Dkt. No. 48 at 10). In that same Petition, the Union sought confirmation and enforcement of the Award, arguing that "the Award draws its essence from the parties' agreements." *Id*. at 13. Now, however, the Union contends that the Arbitrator made "determinations outside of the CBA" and requests that the Court conduct a Board Eligibility hearing and absolve Dr. Mamouzette of the requirement to submit the documentation called for by the Arbitrator's Award. (Dkt. No. 121 at 25). This is "clearly inconsistent" with the Union's earlier position that the Court should "observe the deference generally given to Arbitrator's decisions as dictated by the demands of public policy and judicial economy, and in doing so confirm the Arbitrator's Award . . . ." (Dkt. No. 48 at 14).

Second, the Union succeeded in persuading the Court to accept its earlier position. The Court accepted the Union's argument that Dr. Mamouzette was entitled to confirmation of the

Award pursuant to the Federal Arbitration Act and granted the Union's request to confirm the Arbitrator's Award. *Mamouzette*, 2017 WL 3083628, at *16.

Finally, the Arbitrator concluded that "the matter simply boils down to what was Grievant's '*certification and/or qualification*' status when DOH terminated him." (Dkt. No. 48-1 at 40). Accordingly, the Arbitrator ordered Dr. Mamouzette's reinstatement to be conditioned on the production of the certification/qualification evidence that the Arbitrator found was at the heart of the dispute. If the Court modifies the Award, as the Union requests, Dr. Mamouzette would receive the benefit of reinstatement without having to produce the evidence that undergirds his entitlement to the position to which he would be reinstated. In other words, Dr. Mamouzette would succeed in obtaining the relief requested in his challenge to his suspension and termination without having to establish that he was improperly suspended and terminated from his employment with DOH. Thus, if the Union is not estopped from asserting its inconsistent position, Dr. Mamouzette would both "derive an unfair advantage" from any reinstatement *and* "impose an unfair detriment" on the Government. *New Hampshire*, 532 U.S. at 750-51.

In view of the foregoing, the doctrine of judicial estoppel provides an additional basis for rejecting the Union's attempt to change course at this late stage and succeed on its claim.

### III. CONCLUSION

For the foregoing reasons, the Court will deny the Union's Motion for an Order to Show Cause (Dkt. No. 100).

An appropriate Order accompanies this Memorandum Opinion.

Date: March 10, 2021  _____/s/_____
WILMA A. LEWIS
Chief Judge