DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |
|---|---|
| MOISE MAMOUZETTE,  )<br>)<br>Plaintiff,  )<br>)<br>UNITED INDUSTRIAL WORKERS- )<br>SEAFARERS INTERNATIONAL UNION, )<br>)<br>Intervenor-Plaintiff, )<br>)<br>v.  )<br>)<br>MARC A. JEROME, Individually and in his )<br>official capacity as the Territorial Medical )<br>Director; RONALD ANDERS, Individually and )<br>in his official capacity as Chief of Obstetrics )<br>and Gynecology at Governor Juan F. Luis )<br>Hospital; DARICE PLASKETT, Individually )<br>and in her official capacity as the Commissioner )<br>of the Department of Health; THE VIRGIN )<br>ISLANDS BOARD OF MEDICAL )<br>EXAMINERS; THE GOVERNMENT OF THE )<br>VIRGIN ISLANDS; and DOES 1-5, )<br>)<br>Defendants. )<br>) | Civil Action No. 2013-0117 |

**Attorneys:**
**Yohana M. Manning, Esq.,**
St. Croix, U.S.V.I.
 *For Plaintiff*

**John J. Merchant, Esq.,**
St. Croix, U.S.V.I.
 *For Intervenor-Plaintiff*

**Julie Anne Beberman, Esq.,**
St. Croix, U.S.V.I.
 *For Defendants*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Moise Mamouzette, M.D.'s ("Plaintiff" or "Mamouzette") "Motion for Default Judgment" (Dkt. No. 83), filed on October 15, 2015. Also

before the Court is Defendants Marc A. Jerome, M.D. ("Jerome") and Ronald Anders, M.D.'s ("Anders") (collectively, "Defendants") "Motion to Vacate Entry of Default and to Deny Motion for Default Judgment" ("Motion to Vacate Default") (Dkt. No. 164), filed on December 3, 2021. The opposing parties have not filed responses to the Motion for Default Judgment or the Motion to Vacate Default. For the reasons that follow, the Court will deny Plaintiff's Motion for Default Judgment and grant Defendants' Motion to Vacate Default.

## I. BACKGROUND

Plaintiff was employed "by Defendant Government of the Virgin Islands through the Virgin Islands Department of Health ("DOH")." *Mamouzette v. Jerome*, Civ. A. No. 13-0117, 2017 WL 3083628, *1 (D.V.I. July 19, 2017). After practicing medicine in the Virgin Islands for four years, Plaintiff was suspended from his government position in December 2013 and eventually terminated, allegedly due to issues pertaining to his certification to practice medicine. *Id.* In response, the United Industrial Workers-Seafarers International Union (the "Union") filed a grievance on Plaintiff's behalf challenging the Government's actions. *Id.* Plaintiff subsequently filed this action—in which the Union intervened—alleging constitutional and other violations stemming from his suspension and termination from employment with DOH, the revocation of his Special Unrestricted License ("SUL") to practice medicine, and related circumstances. (Dkt. Nos. 1, 47). Plaintiff also filed a Motion for Temporary Restraining Order ("TRO") seeking to prohibit Defendants from terminating his employment and revoking his SUL to practice medicine. (Dkt. No. 2).

In its Memorandum Opinion addressing the TRO, this Court held that "[t]he propriety of [Mamouzette's] termination . . . falls squarely into the category of disputes arising under the [Collective Bargaining Agreement ("CBA")] for which the grievance procedure is the sole avenue for resolution." *Mamouzette v. Jerome*, No. CV 13-117, 2014 WL 211402, at *4 (D.V.I. Jan. 19,

2014). Therefore, because the arbitration process was not yet pursued, the case was "not properly before the Court." *Id.* at *7.

At the conclusion of the arbitration process, the Arbitrator issued an "Order Based on Party Briefing and Record" ("Award") (Dkt. No. 48-1 at 19-47), and this Court subsequently confirmed the Award. *Mamouzette v. Jerome*, Civ. A. No. 13-0117, 2017 WL 3083628, *16 (D.V.I. July 19, 2017). However, the award "was made against the Government only—not the individual Defendants or the Virgin Islands Board of Medical Examiners." *Id.* at *3.

In sum, the Arbitrator ordered Mamouzette "reinstated effective with his August 25, 2014 submission of certification/qualification supporting documentation to the DOH." (Dkt. No. 48-1 at 46). However, per the Award, Plaintiff's reinstatement was contingent upon the certification/qualification documentation being provided to the DOH. *Id.* In light of this contingency and Mamouzette's failure to provide the required documentation, issues regarding enforcement of the Award followed. This led to the Court's decision in March 2021 denying the Union's request to modify the Award and upholding the Court's earlier decision affirming the Award. *See Mamouzette v. Jerome*, No. CV 2013-0117, 2021 WL 920860 (D.V.I. Mar. 10, 2021). The Court's ruling in this regard resolved the matter as against the Government of the Virgin Islands.

Since this Court's March 2021 decision, the case has proceeded against the remaining Defendants, including Jerome and Anders. A Scheduling Order has been entered, setting deadlines for, *inter alia*, amending pleadings, joinder of parties, and fact and expert discovery. (Dkt. No. 162).

In the instant Motion, Plaintiff seeks a default judgment against Jerome and Anders in light of their failure to Answer the Complaint. (Dkt. No. 83 at 1). Prior to his Motion for Default Judgment, Plaintiff requested entry of Default against these Defendants on April 28, 2015. (Dkt.

3

No. 68). On July 20, 2015, the Clerk of Court entered default against Defendants, stating that Defendants "were individually served with a copy of the summons and complaint" by Plaintiff, but they "failed to answer, plead, appear or otherwise defend." (Dkt. No. 81).

The Court construes Plaintiff's Motion for Default Judgment as one filed pursuant to Fed. R. Civ. P. 55(b), based on the case law Plaintiff cites in his motion. *See* (Dkt. No. 83 at 2) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1147-48 (3d Cir. 1990) (examining whether the district court abused its discretion in entering default judgment under Rule 55(b)). Procedurally, Plaintiff argues that the Court may enter default judgment because both Defendants "were properly served and both have failed to respond to the complaint." (Dkt. No. 83 at 1). Further, Plaintiff argues that as to Counts 1, 2, 6, 7 and 9, he is entitled to default judgment on the merits, "against Defendants Jerome and Anders, individually." *Id.* at 2-11, 12.

Defendants Jerome and Anders request that the Court vacate the entry of default against them and deny Plaintiff's Motion for Default Judgment. Defendants assert that the default entered against them "does not specify whether the default was in their official or individual capacities," and Defendants therefore argue that default should be vacated as to both. (Dkt. No. 164 at 1). Specifically, Defendants argue that: 1) default must be vacated because they "were not properly served in their official capacities"; and 2) default should be vacated because Defendants can show "good cause," under Fed. R. Civ. P. 55(c). *Id.* at 1, 2.

Upon consideration of the parties' submissions and the entire record, the Court concludes that default was entered against Defendants Jerome and Anders in their individual capacities. The Court will grant Defendants' Motion to Vacate Default and will deny Plaintiff's Motion for Default Judgment. The Court will also allow Plaintiff thirty days from the date of the Order accompanying this Memorandum Opinion to properly serve Jerome and Anders in their official capacities.

4

## II.     APPLICABLE LEGAL PRINCIPLES

To be entitled to default judgment, the moving party must present evidence, by affidavits and/or documents, of the following:

> (1) that default was entered; (2) that the defendant has not appeared; (3) that the defendant is not an infant or incompetent [person]; (4) that all pleadings were validly served upon the defendant; (5) the amount of judgment and how it was calculated; and (6) an affidavit of non-military service.

*Prestige Prop. Mgmt., LLC v. DEL Enter., LLC*, No. CV 2019-3, 2020 WL 714111, at *2 (D.V.I. Feb. 12, 2020). Once this evidence is presented, it is within the discretion of the Court to determine whether a default judgment should be entered. *See Pieczenik v. Comm'r New Jersey Dep't of Env't Prot.*, 715 F. App'x 205, 209 (3d Cir. 2017); *Catanzaro v. Fischer*, 570 F. App'x 162, 165 (3d Cir. 2014). In deciding the issue, the Third Circuit has expressed a preference for the resolution of matters on the merits. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984).

Under Fed. R. Civ. P. 55(c), "[t]he court may set aside an entry of default for good cause." As with the entry of default judgments, "[a] judgment setting aside the entry of default is within a district court's discretion." *Doe v. Hesketh*, 828 F.3d 159, 174 (3d Cir. 2016) (citation omitted). In determining whether good cause is present, factors the Court should consider are: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *Id.* at 175 (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

## III.     DISCUSSION

The Court will address Defendants' Motion to Vacate Default first, because if the entry of default is vacated, default judgment cannot be entered in Plaintiff's favor. *See Benjamin v. Esso Standard Oil Co.*, No. 2008-CV-0101, 2009 WL 890461, at *1 (D.V.I. Mar. 30, 2009) (explaining that the "general rule is that entry of default must be entered prior to any entry of default judgment"

and denying as moot Plaintiff's motion for default judgment because the entry of default "was set aside and vacated by the Court"). The Court will first address whether default was entered in Jerome's and Anders' individual and/or official capacities. Based on the Court's conclusion in that regard, the Court will proceed to address whether the entry of default should be vacated.

### A. Individual and/or Official Capacity Entry of Default

Defendants Anders and Jerome assert that the entry of default does not specify whether default was entered in their individual and/or official capacities. They therefore seek to vacate the entry of default as to both. The Court finds, however, that the default was entered in Defendants' individual capacities. The Court's conclusion is based on several factors.

First, Plaintiff's Request for Entry of Default is against "the defendants **Marc A Jerome and Ronald Anders**," (Dkt. No. 68), and Plaintiff's proposed order for the Request states that "default is entered against Defendants **Marc Jerome** and **Ronald Anders**, individually" (Dkt. No. 71-1). Second, Plaintiff's Declarations in support of the entry of default state that Defendants Jerome and Anders were served on December 13, 2013 "with personal service." (Dkt. Nos. 76, 77). Third, the Entry of Default states that Defendants Jerome and Anders "were individually served with a copy of the summons and complaint by [Plaintiff] but [have] failed to answer, plead, appear or otherwise defend." (Dkt. No. 81). Fourth, both parties have acknowledged that the entry of default was in Defendant Jerome's and Anders' individual capacities. *See* (Dkt. No. 89 at 9) (statement in Plaintiff's Reply to Opposition to Petition to Confirm Arbitrator's Award: "Dr. Mamouzette stands by his Motion for Default Judgment as to the individual defendants and seeks an expedited ruling in that matter."); Status Conference and Show Cause Hearing at 10:53 a.m., *Mamouzette v. Jerome*, 1:13-cv-0117 (Nov. 10, 2021) (statement by counsel for Defendants Anders and Jerome: "There was an entry of default against Dr. Anders and Dr. Jerome, only, not against the Government of the Virgin Islands. That would have been in their individual capacity.").

6

Accordingly, the Court concludes that default was entered against Anders and Jerome in their individual capacities.

### B. Entry of Default in Defendants' Individual Capacities

With regard to the entry of default against Defendants in their individual capacities, the Court examines the factors set forth by the Third Circuit to determine whether "good cause" for setting aside the default has been shown under Fed. R. Civ. P. 55(c).

As to the first factor—whether the plaintiff will be prejudiced—"courts may look at the loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *Sellow v. Nwachukwu*, No. 3:18-cv-13820-PGS-TJB, 2019 WL 6170785, at *3 (D.N.J. Nov. 20, 2019) (citing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982)). Prejudice can also be established "when a plaintiff's 'ability to pursue the claim has been hindered.'" *Id.* (quoting *Feliciano*, 691 F.2d at 657).

Defendants argue that during the pendency of this matter, Plaintiff has been pursuing remedies through a grievance proceeding. Thus, vacating the default would not be prejudicial. (Dkt. No. 164 at 3). Defendants point out that discovery has not commenced "on any of the claims outside the scope of the collective bargaining agreement." *Id.* Further, they argue that there is no prejudice to Plaintiff that could arise from the loss of available evidence because the evidence has been preserved during the "grievance phase of this matter." *Id.* Finally, Defendants argue that their default has not caused any delay. *Id.* at 4.

The Court recognizes that Defendants Anders and Jerome failed to respond to Plaintiff's complaint for more than eighteen months before default was entered, and that six years then elapsed between the filing of Plaintiff's Motion for Default Judgment and Defendant's Motion to Vacate Default. Despite this long delay, the Court does not find that there has been prejudice to Plaintiff because Plaintiff has been proceeding through arbitration against the Government of the

Virgin Islands. *Mamouzette v. Jerome*, No. CV 13-117, 2014 WL 211402, at *4, *7 (D.V.I. Jan. 19, 2014). Thus, Plaintiff's ability to pursue his claims against Defendants has not been meaningfully hindered. In addition, evidence was preserved as part of the arbitration, and although fact discovery has now commenced it is not required to be completed until June 30, 2022. (Dkt. No. 162 at 2). Accordingly, the Court finds that this first factor weighs in favor of Defendants.

As to the second factor, the Third Circuit explains that "[t]he showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). A defendant must allege "specific facts beyond simple denials or conclusory statements." *Sellow,* 2019 WL 6170785, at *4 (quoting *Mrs. Ressler's Food Prod. v. KZY Logistics LLC*, 675 F. App'x 136, 141 (3d Cir. 2017)). Beyond this, however, it is sufficient for a defendant to show that the defense is not facially without merit. *See Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987) ("We need not decide the legal issue at this time; it is sufficient that [Defendant's] proffered defense is not 'facially unmeritorious.'") (citation omitted)).

Based on Defendants' Motion to Vacate Default, the Court finds that Defendants have asserted defenses that are not facially unmeritorious. As to Counts I and II (Violations of 42 U.S.C. § 1983), Defendants allege that they have a meritorious defense in the form of qualified immunity. (Dkt. No. 164 at 4). To prove the defense of qualified immunity, a court asks (1) whether the individual violated a constitutional right, and (2) whether that right was clearly established, such that it would have been clear to the individual that the conduct was unlawful. *El v. City of Pittsburgh*, 975 F.3d 327, 334 (3d Cir. 2020). Here, Defendants argue that Plaintiff cannot show that Defendants violated a constitutional right because the § 1983 claims turn on the same facts as those presented in arbitration, where the arbitrator found that the decision to terminate Plaintiff

8

"for lack of documentation of his certification/eligibility was reasonable at the time . . . ." (Dkt. No. 164 at 4-5). Thus, according to Defendants, the Court will "likely reach the same conclusion as the Arbitrator" and find that Defendants acted reasonably. *Id.* at 5. Defendants further argue that their qualified immunity defense is equally applicable to Count VIII, which is entitled "Breach of the Implied Covenant of Good Faith and Fair Dealing," but nonetheless "alleges a denial of due process." *Id.; see* (Dkt. No. 1 at 29) (alleging under Count VIII that Plaintiff "was entitled to a fair proceeding and due process by the Medical Board" before he was terminated for not being qualified). The Court agrees that the defenses asserted as to Counts I, II, and VIII are not facially unmeritorious.

As to Count III (Breach of Contract), Count IV (Breach of the Implied Covenant of Good Faith and Fair Dealing), and Count V (Wrongful Discharge), Defendants argue that these causes of action cannot be brought against them in their individual capacities because they did not "have an employment relationship of any kind with Dr. Mamouzette." (Dkt. No. 164 at 5). Counts III (Breach of Contract) and V (Wrongful Discharge) assert that the Government of the Virgin Islands breached the contract and wrongfully discharged Plaintiff (Dkt. No. 1 at 26-27), while Count IV (Breach of Implied Covenant of Good Faith and Fair Dealing), appears to reference the same contract that the Government allegedly breached. *Id.* The Court finds that the defense asserted is not facially unmeritorious as to these Counts.

Defendants argue that Counts VI (Violation of Virgin Islands Antitrust Act), VII (Tortious Interference with Prospective Economic Advantage), IX (Violation of the Sherman Act), and XI (Unfair Competition), are not meritorious because the facts as alleged do not support a theory that they had an anti-competitive motive in causing Plaintiff to lose his position and license. (Dkt. No. 164 at 5). Regarding Count VI, Plaintiff's Complaint does not specify which section of the Virgin Islands Antimonopoly Law ("Antimonopoly Law") he alleges that Defendants violated, but

9

violations of the law include the actions of any person who "[b]y contract, combination, or conspiracy with one or more other persons unreasonably restrain trade or commerce." 11 V.I.C. § 1503(2). To violate 11 V.I.C. § 1503(2), persons must have acted for the purpose of restraining trade. *See Chiang v. Turnbull*, 43 V.I. 49, 73 (Terr. V.I. June 20, 2000) (dismissing plaintiffs' 11 V.I.C. § 1503 claim because they failed to allege that "Defendants contracted, combined, or conspired *for the purpose of restraining trade*") (emphasis in original). The Antimonopoly law also covers Count XI, Unfair Competition. *See Gardiner v. St. Croix Dist. Governing Bd. of Directors*, 2019 VI SUPER 59U, ¶ 33 ("The Defendants are correct in their assertion that unfair competition is prohibited under § 1503 of the Virgin Islands Antimonopoly Law.").

Regarding Count IX, Plaintiff's Complaint does not specify which section of the Sherman Antitrust Act Defendants allegedly violated, but § 3(a) declares illegal any "contract, combination . . . or conspiracy, in restraint of trade or commerce in any Territory of the United States." 15 U.S.C. § 3(a). The Third Circuit has stated that "[a]n agreement which has the *purpose* and effect of reducing output is illegal under §1 of the Sherman Act," which contains the same operative language as § 3(a). *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 247 (3d Cir. 2001) (citations omitted) (emphasis added); *see* 15 U.S.C. § 1 ("Every contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."). Regarding Count VII, to prevail on a claim of tortious interference with prospective economic advantage, a plaintiff must demonstrate, *inter alia*, *intentional interference* with "a professional or business relation that is reasonably certain to produce an economic benefit for the plaintiff." *Gardiner*, 2019 VI SUPER 59U, at ¶ 17 (citation omitted) (emphasis added).

Defendants argue that they are in an age group of professionals who "tend to be winding down their practices" and were "looking to reduce their workload by enticing more medical professionals to the Virgin Islands, which has been perennially lacking in doctors specializing in

obstetrics and gynecology, in particular." (Dkt. No. 164 at 5-6). Defendants also assert that if Jerome were "attempting to corner the market, he would not have sought to allegedly fill [Plaintiff's] shoes immediately," as Plaintiff alleges in his Complaint, but "would have sought to service the gap himself." *Id.* at 6. Defendants argue that if Jerome wanted to "augment his own practice, he would not have encouraged [Plaintiff] 'to start his own private practice where he could supplement his income,'" and would not have offered the use of an office in his private office "for free." *Id.* (quoting (Dkt. No. 1 at 8-9)). Defendants similarly argue that Plaintiff makes no allegation that Defendants "made any attempt to capture [Plaintiff's] patients when he could no longer serve them." *Id.* The Court finds that as to Counts VI, VII, IX, and XI, Defendants' arguments that the facts do not support that they had the motive to restrain trade or commerce, or intentionally interfere with Plaintiff's business relations, are not facially unmeritorious.

Finally, for Count X (Virgin Islands Criminally Influenced and Corrupt Organizations Act) ("CICO"), Defendants argue that the claim has no merit because Plaintiff did not allege that Defendants benefitted financially in any way from Plaintiff's termination; made no allegations that would "support a finding of criminal intent;" and cannot show that Defendants were the cause of the injury Plaintiff suffered. *Id.* at 7. Rather, Defendants argue that Plaintiff was not reinstated because he failed to show he had the necessary qualifications required by the arbitrator in the Award. *Id.* Without the causation element, Defendants argue that Count X fails. *See Charleswell v. Chase Manhattan Bank, N.A.*, 308 F.Supp.2d 545, 577 (D.V.I. 2004) (dismissing one of plaintiffs' CICO civil remedy claims because plaintiffs failed to allege their injury was the result of conduct constituting a violation of CICO's criminal provisions). The Court agrees that the defense asserted is not facially unmeritorious.

In sum, the defenses asserted by Anders and Jerome to Plaintiff's allegations do not facially appear to be without merit. For these reasons, the second factor weighs in favor of Defendants.

As to the third factor, "culpable conduct" is something "more than mere negligence." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1183 (3d Cir. 1984). Case law requires a finding of "willfulness" or "bad faith." *Id.* at 1182. Indeed, "[e]ven where neglect is inexcusable, and even where the Court cannot condone a defendant's failure to respond to a lawsuit for an extended period of time, culpable conduct warranting the refusal to set aside default must rise to the level of 'flagrant bad faith,' and 'callous disregard of responsibilit[y].'" *Griffen v. Alpha Phi Alpha, Inc.*, No. CIV A 06-1735, 2006 WL 3302438, at *4 (E.D. Pa. Nov. 9, 2006).

Defendants argue that they are not culpable for the entry of default, because they "relied on the Virgin Islands Department of Justice to represent them," and they "have no personal fault in not responding to the Complaint sooner." (Dkt. No. 164 at 8). Although Defendants' delays in responding before default was entered in this case on July 20, 2015 and thereafter show inexcusable neglect—which the Court does not condone—Defendants' averments weigh in favor of vacating the entry of default, as there has been no showing in the record of "flagrant bad faith" by Defendants. *Cf. Ewing & Kreiser, P.C. v. Stephens*, No. CIV.A.08-5490, 2009 WL 1183347, at *4 (E.D. Pa. May 1, 2009) (finding culpable conduct where defendant denied specific allegations in plaintiff's affidavit, failed to recognize the court had personal jurisdiction, and after verbally agreeing to settlement and mediation, refused to sign a settlement agreement on which the court entered judgment); *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006) (finding defendant's conduct culpable where defendant received "all key correspondence" in the case, and failed to respond to the summons and complaint, motion for default, entry of default, and motion for default judgment and "simply gave all the paperwork to its insurance broker").

The three factors weigh in favor of vacating the entry of default against Defendants, and thus good cause is present. Further, because the Third Circuit has "repeatedly stated [its] preference

12

that cases be disposed of on the merits whenever practicable," the Court will grant Defendants' Motion to Vacate Default. *Hritz*, 732 F.2d at 1181. Given that the Court will vacate the entry of default against Defendants Jerome and Anders, Plaintiff's Motion for Default Judgment must be denied as moot. *See Benjamin v. Esso Standard Oil Co.*, No. 2008-CV-0101, 2009 WL 890461, at *1 (D.V.I. Mar. 30, 2009) (explaining that the "general rule is that entry of default must be entered prior to any entry of default judgment" and denying as moot Plaintiff's motion for default judgment because the entry of default "was set aside and vacated by the Court").

### C. Defendants' Official Capacity Argument

Although the Court has concluded that the entry of default as to Jerome and Anders was in their individual capacities, the Court takes note of Defendants' argument in which they maintain that they were not properly served with process in their official capacities.

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978); *see also Nibbs v. Roberts*, No. 91-cv-0029, 1995 WL 78295, *5 (D.V.I. Feb. 8, 1995) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them.") (quoting *Hafer v. Melo*, 502 U.S. 21, 27 (1991))) (internal punctuation omitted). Here, Defendant Jerome is sued in his official capacity as the Territorial Medical Director. (Dkt. No. 1 at 8). Defendant Anders is sued in his official capacity as chief of OB/GYN at Governor Juan F. Luis Hospital. *Id.* at 12. Because Defendants are officers of the Government of the Virgin Islands, the suit is against the Government of the Virgin Islands.

Under the Federal Rules of Civil Procedure, to serve the Government of the Virgin Islands, one must serve the chief executive officer, i.e., the Governor of the Virgin Islands. *See* Fed. R. Civ. P. 4(j)(2) (requiring service on a state or local government by serving the chief executive

13

officer or by service as prescribed by state law); *Thomas v. Bonanno*, Civ. No. 2013-06, 2013 U.S. Dist. LEXIS 106214, *24 (D.V.I. July 30, 2013) ("Virgin Islands law does not admit of any means of serving the government except by serving the chief executive officer—that is, the Governor of the Virgin Islands."). The record does not reflect that Plaintiff has served the Governor of the Virgin Islands. Rather, Plaintiff served the "Government of the Virgin Islands" at Government House, 1131 King St., Christiansted VI 00820. (Dkt. No. 11). Thus, service was not proper for a suit against Jerome and Anders in their official capacities. *See Callwood v. Gov't of Virgin Islands*, No. CV 2008-119, 2014 WL 7450083, at *1 (D.V.I. Dec. 30, 2014) (explaining that the court previously dismissed the case for lack of timely service of a summons listing the "Government of the Virgin Islands, Charlotte Amalie, St. Thomas, U.S.V.I." as "the defendant and addressee" because the summons did not comply with Rule 4(j)(2) by serving "the Governor of the Virgin Islands").

Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). In light of the current posture of this case—including the Court's ruling herein that will allow the case to proceed on the merits against Defendants Jerome and Anders—the Court will grant Plaintiff additional time to properly serve those Defendants in their official capacities. In that regard, the Court will order that Plaintiff shall have thirty days from the date of the Order accompanying this Memorandum Opinion within which to achieve proper service.

## IV.   CONCLUSION

The Court will grant Defendants' Motion to Vacate Default (Dkt. No. 164) and vacate the default (Dkt. No. 81) entered against Defendants Jerome and Anders in their individual capacities.

14

Further, because the entry of default is vacated as to Defendants, the Court will deny Plaintiff's Motion for Default Judgment (Dkt. No. 83) as moot. Finally, the Court will allow Plaintiff thirty days from the date of the Order accompanying this Memorandum Opinion within which to properly serve Jerome and Anders in their official capacities.

An appropriate Order accompanies this Memorandum Opinion.

Date: April 5, 2022

_____/s/_____
WILMA A. LEWIS
District Judge