# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| MOISE MAMOUZETTE, )<br>)<br>      **Plaintiff,** )<br> v. )<br>)<br>MARC A. JEROME, Individually and in his )<br>official capacity as the Territorial Medical )<br>Director; RONALD ANDERS, Individually and )<br>in his official capacity as Chief of Obstetrics )<br>and Gynecology at Governor Juan F. Luis )<br>Hospital; DARICE PLASKETT, Individually )<br>and in her official capacity as the Commissioner )<br>of the Department of Health; THE VIRGIN )<br>ISLANDS BOARD OF MEDICAL )<br>EXAMINERS; THE GOVERNMENT OF THE )<br>VIRGIN ISLANDS; and DOES 1-5, )<br>)<br>      **Defendants.** )<br>_____ ) | Civil Action No. 13-0117 |

**Attorneys:**
**Atiim Dia Abraham, Esq.**
**Yohana M. Manning, Esq.**
St. Croix, U.S.V.I.
 *For Plaintiff*

**Julie Anne Beberman, Esq.,**
St. Croix, U.S.V.I.
**Joss N. Springette, Esq.,**
St Thomas, U.S.V.I.
 *For Defendants*

## **MEMORANDUM OPINION**

**Lewis, District Judge**

  THIS MATTER comes before the Court on Magistrate Judge Ruth Miller's Report and Recommendation (Dkt. No. 218) ("R&R") in which the Magistrate Judge addresses a Motion to Dismiss for Failure to State a Claim against Defendants Marc A. Jerome, M.D. ("Jerome") and

Ronald Anders M.D. ("Anders") in their individual capacities. (Dkt. No. 168). Magistrate Judge Miller recommends that Jerome and Anders' Motion be granted. The Court has not received any objections to the R&R. For the reasons discussed below, the Court will adopt the R&R in part and reject it in part. Specifically, the Court will reject the portion of the R&R that recommends the dismissal of Plaintiff's claim of Tortious Interference with Existing Business Prospects in Count VII, but otherwise adopt the R&R as modified herein.  The Court will therefore grant in part and deny in part Jerome and Anders' Motion to Dismiss.  (Dkt. No. 168).

## I.     BACKGROUND

The following is a summary of the facts relevant to Defendant Jerome and Anders' Motion to Dismiss.[1]

Plaintiff Moise Mamouzette, M.D. was previously employed at the Charles Harwood Clinic ("Charles Harwood") as an obstetrician and gynecologist by the Virgin Islands Department of Health ("DOH"). (Dkt. No. 1 at ¶ 31). Plaintiff alleges that he treated approximately 400 patients at Charles Harwood, and that those patients ultimately "g[a]ve birth" at the Juan F. Luis Hospital. *Id.* at ¶¶ 64-65. Jerome was the Director of Family Planning Services at Charles Harwood, and Anders was head of OBGYN at the Juan F. Luis Hospital. *Id.* at 30, 59.

While Plaintiff was employed at Charles Hardwood, Jerome offered and Plaintiff accepted an office inside of Jerome's private practice office space to start Plaintiff's own supplemental private practice. (Dkt. No. 1 at ¶ 36). In his private practice, Plaintiff alleges that as "Dr. Jerome's patients [] began to make appointments with Dr. Mamouzette . . . Dr. Jerome surreptitiously diverted patients who would come to see Dr. Mamouzette to himself," and that Jerome "disseminated slander and libel." (Dkt. No. 1 at ¶¶ 43, 47, 66). Plaintiff further alleges that when

---

[1] A more detailed account of the facts can be found in the R&R. (Dkt. No. 218).

Anders treated Plaintiff's patients at the hospital, Anders "often [told] Dr. Mamouzette's patients that [Plaintiff's] actions constitute malpractice" and advised at least one patient to "stop being treated by Plaintiff." *Id.* at ¶ 66, 92. Plaintiff alleges that Anders has "interfered in countless [] patient relationships." *Id.* at ¶ 84. Plaintiff also alleges that he overheard a phone call between Jerome and Anders, wherein Anders "denied Dr. Mamouzette's competence as a physician and urged Dr. Jerome to restrain the plaintiff from doing ultrasounds[.]" *Id.* at ¶ 57.

Ultimately, a dispute arose as to Plaintiff's qualifications and the DOH suspended and subsequently terminated Plaintiff due to issues with his certification to practice medicine. (Dkt. No. 98 at 2). In December 2013, Plaintiff filed this action—in which the Industrial Workers-Seafarers International Union (the "Union") intervened—alleging, *inter alia*, constitutional and other violations in connection with Plaintiff's suspension and ultimate termination from employment. *Id.* This matter then went to arbitration, where the arbitrator determined that Plaintiff's termination "for lack of documentation of his certification/eligibility was reasonable at the time," but required Plaintiff to be "reinstated" following the submission of "certification/qualification documentation . . . to the DOH." (Dkt. No. 218 at 3, 5). Following the arbitration, the Court confirmed the Arbitration Award and denied the Union's request to modify the award so as to "disregard the submissions [of certification/qualification documentation] required by the Award." (Dkt. No. 140 at 6).

On April 8, 2022, Jerome and Anders filed their Motion to Dismiss. (Dkt. No. 168). Notwithstanding that the Court granted Plaintiff two extensions of time to file a response to Jerome and Anders' Motion to Dismiss—one *sua sponte* by the Court after Plaintiff failed to timely respond to Defendants' Motion (Dkt. No. 186) and a second one granted upon Plaintiff's motion (Dkt. No. 187)—Plaintiff never filed a response to Jerome and Anders' Motion.

On September 14, 2023, the Magistrate Judge issued her R&R recommending that the Court grant Jerome and Anders' Motion to Dismiss. (Dkt. No. 218 at 6). Plaintiff did not file an objection to the R&R.

## II.   APPLICABLE LEGAL PRINCIPLES

### A.   Standard of Review

Parties may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); LRCi 72.3. Where—as here—the parties do not object to a magistrate judge's report and recommendation, there is no requirement that a district court review the report and recommendation before accepting it. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."); *Sunshine Shopping Ctr., Inc. v. LG Elecs. Panama*, 2023 WL 6388015, at *3 (D.V.I. Sept. 30, 2023) (citing *Banco Popular de Puerto Rico v. Gilbert*, 424 F. App'x 151, 153 (3d Cir. 2011). Notwithstanding *Thomas*, the Third Circuit has stressed that, even in the absence of an objection, the "better practice is to afford some level of review to dispositive legal issues raised by the report." *Broomall v. DA of the Cnty. of Delaware*, 2024 WL 1163542, *1 n.1 (E.D. Pa. Mar. 18, 2024) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987); *see also Banco Popular de Puerto Rico v. Gilbert*, 424 F. App'x at 153 ("Even if neither party objects to the magistrate's recommendation, the district court is not bound by the recommendation of the magistrate.") (internal quotation omitted).

Accordingly, a district judge reviews those portions of the magistrate judge's report and recommendation to which parties have not objected under the "plain error" standard of review. *See*

4

*Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006) (holding that the failure to file objections to a portion of a magistrate judge's report and recommendation waived the party's right to *de novo* review and the scope of review was to be "conducted under the far more deferential standard of 'plain error,'"); *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017). "Under this standard, the court reviews the magistrate judge's report and recommendation for error that is 'clear or obvious.'" *Bell v. Gov't of United States Virgin Islands*, 2020 WL 487214, at *1 (D.V.I. Jan. 30, 2020) (citation omitted); *see also United States v. Olano*, 507 U.S. 725, 734 (1993) (explaining that "plain error" means clear or obvious, and it must be prejudicial, in that "[i]t must have affected the outcome of the district court proceedings").

**B.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) calls for dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). As stated in *Connelly v. Lane Construction Corp.*, the Third Circuit follows the analysis set forth by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when considering a Rule 12(b)(6) motion:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

"When assessing the merits of a Rule 12(b)(6) motion, we accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving

5

party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). Further the district court must accept "all reasonable inferences that can be drawn from [well-pleaded factual allegations] after construing them in the light most favorable to the nonmovant." *Boseman v. Upper Providence Twp.*, 680 Fed. App'x. 65, 66 (3d Cir. 2017) (internal citation and quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'" *Nekrilov v. City of Jersey*, 45 F.4th 662, 668 (3d Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boseman v. Upper Providence Twp.*, 680 Fed. App'x. 65, 67 (3d Cir. 2017) (internal citation and quotation omitted).

## III.  DISCUSSION

No party has filed an objection to the R&R. The Court therefore reviews the R&R under the plain error standard. *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017). The Court finds no plain error in Magistrate Judge Miller's R&R with respect to Counts I-VI and VIII-XI.[2] Accordingly, the Court will adopt the Magistrate Judge's rulings as to these Counts and dismiss those claims as to Jerome and Anders in their individual capacities. As to Count VII, however, the Court finds plain error in the Magistrate Judge's ruling that Plaintiff's third theory of liability fails to state a claim because he fails to plead sufficient damages. As such, the Court will not adopt the Magistrate Judge's ruling on Count VII and will not dismiss Count VII as to Jerome and Anders in their individual capacities.

---

[2] As described in more detail in the R&R, because of the "shotgun" nature of the pleading, it is unclear from the face of Plaintiff's Complaint whether all allegations are brought against all Defendants. For purposes of its analysis, however, the Court will assume that all counts are raised against all Defendants. (Dkt. No. 218 at 8-9).

A.    **Section 1983 Claims (Counts I and II)**

Plaintiff alleges two claims under 42 U.S.C. § 1983. Both causes of action make generalized allegations of violations of Due Process. In Count I, Plaintiff alleges that "[t]he actions of the Defendants while acting under the color of law shocks the conscience in the way that properly gives rise to Due Process Violations." (Dkt. No. 1 at ¶¶ 149-151). Count II alleges that "[p]rocedural due process further requires an opportunity to correct mistakes. The procedures taken by Defendants while acting under the color of law constitute due process violations." (Dkt. No. 1 at ¶¶ 152-154).

The Court finds no plain error in the Magistrate Judge's conclusion that Plaintiff failed to sufficiently plead with particularity his Section 1983 claims against Jerome and Anders in their individual capacities. *See* (Dkt. No. 218 at 11-12) (recognizing that Section 1983 claims made against defendants in their individual capacities must be "made with appropriate particularity" and that the Complaint "contains no well-pleaded facts supporting any discernable cause of action under § 1983 against these defendants in their individual capacity") (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Plaintiff's Complaint does not specify the violations of Due Process that he alleges and there is no obvious or discernable violation of Due Process apparent from the face of the Complaint.[3] The Court will therefore dismiss Counts I and II as to Jerome and Anders in their individual capacities.

---

[3] Because Plaintiff did not file a response to Jerome and Anders' Motion to Dismiss or object to the Magistrate Judge's R&R, the Court lacks any argument from Plaintiff explaining the nature of the alleged violations of Due Process in Counts I and II, and no such violations are apparent from the face of the Complaint.

### B. Contract and Wrongful Discharge Claims (Counts III, IV, V, and VIII)

Plaintiff's Complaint alleges four claims[4] arising out of his employment with the DOH. Plaintiff has not alleged that he was employed by or had an employment contract with Jerome or Anders.[5] Accordingly, the Court finds no plain error in the Magistrate Judge's ruling that, to the extent Plaintiff asserts these counts against Jerome and Anders in their individual capacities, the Complaint fails to state a claim. (Dkt. No. 218 at 12-13). As such, the Court agrees with the Magistrate Judge that Counts III, IV, V, and VIII should be dismissed as to Jerome and Anders in their individual capacities.

### C. Antitrust and CICO Claims (Counts VI, IX, X, and XI)

Counts VI alleges that Defendants' conduct violates the Virgin Islands Antitrust Act—also known as the Virgin Islands Antimonopoly Law; Count IX alleges that Defendants' conduct

---

[4] Count III alleges that the "Government" breached its employment contract with Plaintiff by failing to pay him for the first five months he was employed (Dkt. No. 157). Count IV alleges that "Defendants have breached the covenant of good faith and faith [sic] dealing by failing to perform his [sic] obligations under the contract." (Dkt. No. 162). Count V, Wrongful Discharge, alleges that the "Government of the Virgin Islands Wrongfully Discharged the Plaintiff." (Dkt. No. 165). And, Count VIII alleges that the covenants of good faith and fair dealing were breached in the process of "Defendants" conspiring to revoke his Special Unrestricted License and his subsequent termination. (Dkt. No. 178-180).

[5] "To [state a] breach of contract claim under Virgin Islands law, a plaintiff must [allege] four elements: (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages." *Smith v. Meade*, 2022 U.S. Dist. LEXIS 53161, at *7 (D.V.I. March 24, 2022). "To state a claim for breach of the covenant of good faith and fair dealing, a 'plaintiff must show that (1) a valid contract exists between the parties, and (2) acts committed by the [defendant] amount to fraud or deceit or an unreasonable contravention of the parties' reasonable expectations under the contract; and (3) that damages suffered as a result.'" (Dkt. No. 218 at 13 n.22) (quoting *Dukes v. Fay Servicing, LLC*, 2022 WL 16855409, at *4 (D.V.I. Nov. 10, 2022). To state a claim for wrongful discharge under 24 V.I.C. § 76, Plaintiff must allege that "(1) an employee has been discharged; (2) by an employer; (3) who violated the provisions of section 76." *Motylinski v. Glacial Energy (VI), LLC*, 2021 U.S. Dist. LEXIS 167769, at *28 (D.V.I. Sept. 3, 2021).

violates the Sherman Act; and Count XI alleges that Defendants' conduct constitutes unfair competition. *Id.* at 13-14. As the Magistrate Judge notes, under Virgin Islands law, Plaintiff's Unfair Competition claim (Count XI) merely restates his Virgin Islands Antimonopoly Law Count.[6] *Id.* at 14 (citing *Gardiner v. St. Croix Dist. Governing Bd. of Dirs.*, 2019 V.I. LEXIS 87, at *18 (V.I. Super. Ct. July 30, 2019) ("the Plaintiffs' are merely restating their antitrust claim because unfair competition is a subset of the antitrust law."). As to Counts VI and IX, the Court does not find any plain error in the Magistrate Judge's ruling that Plaintiff fails to state a claim because the alleged trade-restrictive harm to Plaintiff—that he could not work at the Juan F. Luis hospital—was a result of Plaintiff's decision to withdraw his application, not Jerome's and Anders' actions. Further, the Court does not find any plain error in the Magistrate Judge's ruling that "the complaint is devoid of any factual allegations showing an agreement made for purposes of restraining trade."[7] (Dkt. No. 218 at 16). Simply put, while Plaintiff alleges that Jerome and Anders "took steps for the purpose of, *inter alia*, destroying [plaintiff's] ability to provide a full range of services for his medical practice" (Dkt. No. 218 at 16) (citing Dkt. No. 1 at ¶ 194), there are no non-conclusory allegations in the Complaint that Jerome or Anders acted with an unlawful purpose or to an anti-competitive effect.  To the contrary, there are only conclusory allegations—devoid of any alleged facts—that Jerome or Anders entered into any contract, combination, or conspiracy with an anti-competitive motive.  *Id.*

---

[6] "To violate 11 V.I.C. § 1503(2) [the Virgin Islands Antimonopoly Law], persons must have acted for the purpose of restraining trade." (Dkt. No. 166 at 10) (citing *Chiang v. Turnbull*, 43 V.I. 49, 73 (Terr. V.I. June 20, 2000)).

[7]  "As a general rule, a civil antitrust violation may be established by proof of an agreement and either (1) an unlawful purpose, or (2) an anticompetitive effect." (Dkt. No. 218 at 14) (citing *Lower Love S.S., Inc. v. Ginseng Up Corp.*, 50 V.I. 937, 943 (D.V.I. 2008).

In Count X, Plaintiff claims that the "alleged unlawful conduct of Defendants" is in violation of the Criminally Influenced and Corrupt Organizations Act, 14 V.I.C. § 600 ("CICO"). (Dkt. No. 1 ¶¶ 187-191).[8] The Court does not find plain error in the Magistrate Judge's conclusion that Count X fails to state a claim because Plaintiff fails to allege facts showing that Jerome and Anders engaged in a "pattern of criminal activity." *Gov't of V.I. v. Takata Corp.*, 67 V.I. 316, 368 (Super. Ct. 2017)); *see* (Dkt. No. 218 at 22) (citing *Charleswell v. Chase Manhattan Bank, N.A.*, 45 V.I. 495, 534 (D.V.I. 2004)).

### D.    Tortious Interference Claims (Count VII)

Count VII, Tortious Interference with Existing and Future Business Prospects, asserts three theories of liability under this cause of action. Plaintiff asserts that Defendants tortiously interfered with his existing and future business prospects by 1) "wrongfully terminating" him; 2) using "false evidence" to persuade the Juan F. Louis hospital to deny him hospital privileges; and 3) "questioning [his] competence to his patients." (Dkt. No. 1 at ¶¶ 173-175).

The Court finds no plain error in the Magistrate Judge's rulings that the first two theories of liability fail to state a claim against Jerome and Anders in their individual capacities. (Dkt. No. 218 at 18-19). As the Magistrate Judge correctly notes with respect to Plaintiff's first theory, Plaintiff has not alleged an employment contract with Jerome and Anders individually. Moreover, this Court has already confirmed an arbitration award grounded in a finding that Plaintiff's termination by the DOH was reasonable in light of Plaintiff's failure to supply the DOH with his

---

[8] "[I]n order to state a claim under CICO, Plaintiff must identify: (1) a 'person'; (2) an 'enterprise'; and (3) demonstrate that the person conducted or participated in the affairs of the enterprise through a 'pattern of criminal activity.'" *Gov't of V.I. v. Takata Corp.*, 67 V.I. 316, 368 (Super. Ct. 2017).

credentials.[9] For these two independent reasons, there can be no plausible claim that Jerome and Anders "wrongfully terminated" Plaintiff. *Id* at 12 n.19, 18 (citing Dkt. No. 48-1).

As to Plaintiff's second theory, the Court finds no plain error in the Magistrate Judge's conclusion that Plaintiff fails to state a claim of tortious interference because Plaintiff withdrew his application for hospital privileges. (*Id.* at 19) (citing (Dkt. No. 1 at ¶ 52)). As such, Jerome and Anders did not cause Plaintiff to be denied hospital privileges.

With regard to Plaintiff's third theory of liability, the Court finds no plain error in the Magistrate Judge's ruling as to prospective business prospects. "[T]he elements of tortious interference with prospective relations[] requires a plaintiff to establish '(1) the existence of a professional business relationship that is reasonably certain to produce an economic benefit for the plaintiff; (2) intentional interference with that relationship by the defendant; (3) which the defendant accomplished through improper means or for an improper purpose; and (4) the defendant's interference damaged the plaintiff.'" *West Indian Co. Ltd. v. Yacht Haven USVI, LLC*, 2022 U.S. Dist. LEXIS 47173, at *16-17 (D.V.I. Mar. 17, 2022) (quoting *Jahleejah Love Peace d/b/a Natural Livity Kulch Shop & Juice Bar v. Banco Popular de Puerto Rico*, 2022 WL 374274, at *2 (V.I. Feb. 7, 2022)). Plaintiff's Complaint plainly does not satisfy the first element because Plaintiff does not specify any reasonably certain business relationship with any particular *potential* patients. *Contra id.* at *17 (D.V.I. Mar. 17, 2022) (noting that the existence of letters of intent and active negotiations satisfied the first element). Accordingly, the Court agrees with the Magistrate Judge's recommendation to dismiss Plaintiff's tortious interference claims as to his "future business prospects." (Dkt. No. 1 at 174).

---

[9] Plaintiff does not allege that Jerome and Anders prevented Plaintiff from providing the DOH with his credentials. (Dkt. No. 218 at 18-19).

The Court, however, finds plain error in the Magistrate Judge's recommendation that the Court dismiss Plaintiff's tortious interference claims that are based on Jerome's and Anders' alleged actions "questioning his competence" to his *existing* patients. (Dkt. No. 1 ¶ 175). Here, the Magistrate Judge found that Plaintiff failed to plead the fourth element of tortious interference—damages. Specifically, the Magistrate Judge ruled that Plaintiff failed to state a claim because he "fails to plead the requisite economic injury" in that "Plaintiff does not contend [that] any of his patients stopped seeing him due to Anders' comments or any actions by Jerome." (Dkt. No. 218 at 20); *see Medwell, LLC v. Cigna Corp.*, 2021 U.S. Dist. LEXIS 96292, at *14, 14 n.4 (dismissing tortious interference claims where "the Amended Complaint takes care to not allege that MedWell has lost patients . . . the pleading stops just short."). The Court views this reading of Plaintiff's Complaint as too narrow.

In evaluating the Complaint, the Court must accept "well-pleaded allegations in the complaint as true" and view those allegations "in the light most favorable to the plaintiff." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013). Under this standard, Plaintiff's Complaint alleges that he has lost patients as a result of Jerome's and Anders' conduct. In his Tortious Interference claim, Plaintiff generally alleges that "[a]s a direct and proximate cause of their actions, the Plaintiff has suffered damages." (Dkt. No. 1 at ¶ 176). While Plaintiff's Tortious Interference claim does not specify what Plaintiff means by "suffered damages," Plaintiff's Complaint elsewhere alleges that "[a]s a result of the above-described unfair methods of competition, Dr. Mamouzette is suffering immediate and irreparable harm in the form of lost patients, loss of patient confidence, and loss of goodwill in the community." *Id.* at 195. Reading the more general allegation in the Tortious Interference section of the Complaint that Plaintiff "suffered damages" as a result of Defendant's actions in light of Plaintiff's later allegations, and in the light most favorable to

Plaintiff, the Court concludes that the Complaint sufficiently alleges that Jerome and Anders' "questioning [his] competence to his patients" resulted in lost patients and lost patient confidence. *Id.* at ¶¶ 175-76, 195. Bolstering this conclusion, the Complaint specifically alleges an example of one of Plaintiff's patients getting angry with and losing confidence in Plaintiff following alleged defamation by Anders, *Id.* at ¶¶ 63-92, and separately states that "[t]he full extent of Dr. Anders tortious interference . . . will involve the investigation [of] many more patient cases." *Id.* at ¶ 89. On such a record and, in light of Jerome and Anders' Motion to Dismiss not raising the issue of Plaintiff's articulation of damages,[10] "the Court finds it prudent to await the development of [the] record before [dismissing] Plaintiff's tortious interference claim for failure to allege damages." *AlphaCard Sys. LLC v. Fery LLC*, 2020 U.S. Dist. LEXIS 147059, at *12-13 (D.N.J. Aug. 14, 2020) (internal quotation omitted); *see Integra Healthcare, S.C. v. APP of Ill. HM, PLLC*, 2019 U.S. Dist. LEXIS 134840, at *1, 25 (N.D. Ill. Aug. 9, 2019) (declining to dismiss a tortious interference claim where defendant did not challenge plaintiff's damage claim and it was "reasonable to infer" plaintiff may have lost patients).

"To plead a claim for intentional interference with existing contractual relations, a party must allege: (1) the existence of a contact between the plaintiff and a third party, (2) the defendant

---

[10] Jerome and Anders' Motion to Dismiss does not argue that Plaintiff failed to sufficiently allege damages—that Jerome's and Anders' conduct caused Plaintiff to lose patients. Jerome and Anders' Motion to Dismiss lumps Plaintiff's Tortious Interference claims with Plaintiff's Antitrust claims and does not specifically argue that Plaintiff's third theory of liability for Tortious Interference with respect to his private practice patients, fails to state a claim—with respect to damages or any other element. (Dkt. No. 169 at 5-6). Instead, Jerome and Anders argue, as they do with Plaintiff's antitrust claims, that Plaintiff has not demonstrated that Jerome and Anders acted with anti-competitive motive and that Jerome and Anders would not have stood to benefit from Plaintiff losing patients. (Dkt. No. 169 at 5-6). ("Of course, Dr. Mamouzette's patients would still have needed medical services, but there is no indication that they would have had any reason to choose Drs. Jerome or Anders over the other gynecologists practicing in the Virgin Islands or the new gynecologist hired to replace Dr. Mamouzette.").

knew of the contract, (3) the defendant interfered with the contract using improper means or with an improper motive, and (4) the plaintiff was damaged as a result of the defendant's interference." (Dkt. No. 218) (citing *Love Peace v. Banco Popular de P.R.*, 2022 V.I. Supreme LEXIS 2, at *4 (V.I. Feb. 7, 2022)). The Magistrate Judge found that Plaintiff sufficiently alleged the first three elements of tortious interference, and Jerome and Anders did not object to that ruling. Plaintiff has pleaded that he had an economic relationship with his private practice patients. *See* (Dkt. No. 218 at 20-21 n.33) ("the complaint also identifies a contractual relationship between plaintiff and his private practice patients."). Plaintiff has pleaded that Jerome and Anders knew the patients they interacted with were Plaintiff's patients. *See e.g.*, (Dkt. No. 1 at ¶¶ 43, 47, 75). And, Plaintiff has pleaded that Jerome and Anders defamed Plaintiff to his patients. *Donastorg v. Daily News Publishing Co., Inc.*, 63 V.I. 196, 202 ("Improper means include acts that would be independently actionable"); *Illaraza v. Hovensa LLC*, 73 F. Supp. 3d 588, 603 (D.V.I. Nov. 12, 2014) (recognizing defamation as a cause of action under Virgin Islands law). Having now concluded that Plaintiff has sufficiently alleged the fourth and final element of a claim for tortious interference, the Court will reject the Magistrate Judge's recommendation to dismiss Plaintiff's Tortious Interference Count with respect to Plaintiff's third theory of tortious interference with existing business prospects.

## IV.   CONCLUSION

In view of the foregoing, the Court will adopt the R&R in part and reject it in part. Accordingly, the Court will grant Jerome and Anders' Motions to Dismiss, as to Counts I-VI and VIII-XI, and deny the Motion, as to Count VII.

An appropriate Order accompanies this Memorandum Opinion.

Date: May 20, 2024                                          _____/s/_____
                                                            WILMA A. LEWIS
                                                            District Judge